No. 16,798.

Potashnik et al. *v.* Public Service
Company of Colorado.
(247 P. [2d] 137)

Decided July 14, 1952. Rehearing denied August 4, 1952.

Mr. Philip Hornbein, Mr. Philip Hornbein, Jr., Mr. Harold Potashnik, for complainants.

Messrs. Lee, Bryans, Kelly & Stansfield, for respondent.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

This is an original proceeding in the nature of certiorari. The respondent, Public Service Company of Colorado, to which we hereinafter refer as Company, filed petition in the district court in condemnation of certain lands adjacent to its La Combe plant and belonging to complainants here, and whom we will designate as the "owners." It is said that increased consumption of electrical current requires the enlargement of the La Combe generating plant, and that in order to construct a larger plant and install the additional generating units needed upon lands now owned by the Company, it is essential that they remove their machine shop to another location. Additional land further is needed to enable the Company to store a supply of coal to insure continuous operation. Being unable to agree with the owners upon a price for the purchase of their lands, the Company filed the condemnation action. It later added to the original petition an amendment alleging itself to be, in addition to a generator of electrical energy, a producer of steam for the heating of many buildings in the principal business section of Denver and which it caused to be conveyed to its point of use by pipe line. The Company then filed and served notice of hearing upon its petition for an order from the district court granting to it the temporary right to immediate occupancy and use of the lands involved.

The owners (respondents in the condemnation action) filed their motion seeking dismissal of the Company's petition for immediate possession contending: (1) That

there was no statutory or legal authority pursuant to which the Company had the right of condemnation against said lands for the purposes set forth in its petition; and (2) that even if the Company had the right of condemnation under such circumstances, yet it was not entitled to possession of the land pendente lite. The trial court overruled the motion to dismiss the Company's petition for immediate possession and, after hearing evidence, on December 10, 1951, entered an order granting the Company possession upon depositing in the registry of the court the sum of fifty thousand dollars ($50,000) pending final determination of the value of the lands involved.

On December 19, 1951, and within the period of stay of execution granted by the trial court, the owners, not having the right of review of said interlocutory order upon writ of error, filed original action by way of certiorari in this court, alleging that otherwise they were without remedy whatsoever to protect their property from seizure under the order of the district court, which they contend was without lawful authority. The complaint appearing meritorious, we entered a rule upon the Company to show cause why the writ should not issue in accordance with the prayer thereof, and thereupon ordered further stay of enforcement of the order of the district court granting immediate possession pending final determination of our rule. Responding to our show-cause order the Company, on January 11, 1952, filed its motion for dismissal of said original proceeding. Upon these pleadings the matter was submitted and arguments, both oral and written, presented in due course. Upon consideration of said matters by our Court en banc shortly following the conclusion of the arguments, we determined that the Company's motion to dismiss the proceedings in this court should be denied; that our temporary rule should be made absolute; and it was so ordered. Thereupon it further was ordered that the clerk of the district court certify to this court a correct tran-

script of the cause pending in said district court. The record has been so certified; no further showing has been made here, and, as we understand, the parties and their respective counsel now desire our final disposition of the matter by formal opinion upon the record and arguments already before us.

The transcript from the district court, aside from confirmation of certain pleadings involved, brings us nothing new other than the evidence presented upon hearing of the motion for immediate possession, the greater portion of that testimony relating to market value. The entire controversy confronting us on original proceeding relates to matters of law. The complaint here is that the order of the district court is without authority of law. If so, it is of no validity; if supported by law it is proper, and we are not presently further concerned about it.

That a writ of error to review an interlocutory order of the district court will not lie is conceded. That an original proceeding in the nature of certiorari under Rule 106, R.C.P. Colo., when directed to an endangered, fundamentally substantive and substantial right, is maintainable and recognized as a proper remedy is settled. *Swift v. Smith,* 119 Colo. 126, 201 P. (2d) 609.

Whatever may have been the ancient right of condemnation, it has been restrained by constitutional limitations in the protection of individual property rights. The power lies dormant in the state until the legislature speaks. 5 Thompson on Real Property (Permanent Ed.), section 2578, page 327. The right to condemn private property is therefore a creature of statute, pursuant to which it must clearly appear either by express grant or by necessary implication. *Mack v. Town of Craig,* 68 Colo. 337, 191 Pac. 101. For general discussion, see, 5 Thompson on Real Property (Permanent Ed.), sections 2578, 2579, 2580, page 327 et seq.

Statutes granting to certain types of corporations, of which the Company is one, the right to exercise the powers of eminent domain, and charter provisions of

such corporations to enable them to take advantage of this privilege, grant no power in addition to that accorded by the specific provisions of the general law covering that subject, and are designed only to give to those particular corporations the same rights under the eminent-domain provisions as might be exercised by an individual under the same circumstances.

In argument, counsel for the Company state that the trial court held its petition to come within the provisions of section 52, as well as "other applicable sections" of chapter 61, '35 C.S.A., with consequent right to possession pendente lite as provided by section 6 of the same chapter. Other than to say that authority to grant an order for possession pendente lite pursuant to the provisions of section 6 is predicated upon an express or necessarily implied right to condemn, under applicable statute or constitutional provision, we need not herein further discuss it.

█ Did the Company, at the date of the entry of the order for immediate possession, have authority under the law to annex to its plant site by condemnation proceedings adjacent privately owned lands upon which to erect its machine shops and coal storage facilities for use in connection with the operation of its plant? Finding no provision of law so authorizing, either expressly or by necessary implication, we are forced to the conclusion that there then existed no such right.

It is apparent that amendment was made to the original petition to bring into focus the pipe line for carriage of steam, that reliance might be had upon section 52 of chapter 61, '35 C.S.A.; being section 3 of a legislative act approved in 1891. (1891 S.L., pp. 97,98.) Clearly, at that early date, the legislature did not have in contemplation steam lines for commercial heating of cities, and that the "pipe-line" therein mentioned was one intended only for the carriage of water. The full context of the Act clearly so indicates. However, the question of right of way for the steam line is not here involved. Here it is a question

of plant expansion, not right of way for lines for transmission of either electricity or steam.

In 1907 two separate enactments of the legislature became law: Chapter 125 beginning at page 282, S.L. 1907, and chapter 175, at page 385, S.L. 1907. Sections 1 to 16, inclusive, of chapter 125 are now sections 26 to 41, inclusive, of chapter 61, '35 C.S.A., respectively; and sections 1 to 8, inclusive, of chapter 175 are now sections 42 to 49, inclusive, of chapter 61, '35 C.S.A., respectively. Sections 42 and 43 were amended in 1939 (chapter 104, S.L. 1939, page 365) in a manner not here material. All thereof relate to rights of way for transmission facilities of various types and to the extent and regulation thereof, but none grant the power of eminent domain to secure land for the purposes specified in the Company's petition, nor for plant enlargement. The judge of the trial court did not believe that any of these sections of the statute were applicable, and in that view he was correct. A detailed analysis of them is unnecessary.

 It further is contended that regardless of statutes, the right exists in favor of the Company in this instance pursuant to the provisions of section 15 of article II of the Constitution of Colorado, which is said to be self-executing. The pertinent part of the cited section reads: "Private property shall not be taken or damaged, for public or private use, without just compensation. * * *; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be *really public* shall be a judicial question, and determined as such *without regard to any legislative assertion that the use is public.*" (Emphasis supplied.)

Quite the contrary to the contention of counsel representing the Company that, under this provision, the courts may declare a public use and enforce the right of eminent domain in the absence of legislative authority, the actual purpose of this section is to place a limitation even upon legislative enactment. Under the restriction

of this section the legislature itself must exercise care in declaring to be a "public use" (and hence entitled to the right of eminent domain) only that which may meet the legal tests of such use as determined by the judiciary. The general right of eminent domain, under our Constitution, depends upon, first, legislative authority and, second, judicial approval of the purpose as a public use. 5 Thompson on Real Property, supra.

Not finding, and there not having been called to our attention, any statute authorizing condemnation of private property for the purposes alleged in the Company's petition, original and as amended, we adhere to our original conclusion, and direct that the rule heretofore entered be made absolute; that the writ in this action sought, be granted, and the trial court directed to vacate its order for possession of complainants' property pendente lite.