**CITY OF AURORA, Colorado, a Municipal corporation, Petitioner-Appellant, Cross-Appellee,**

v.

**COMMERCE GROUP CORP., a Delaware corporation; Edward A. Machulak; Sylvia Machulak; County of Park, acting By and Through its Board of Commissioners; Trophy Homes, Inc., a Wisconsin corporation; Houston Oil & Minerals Corporation, a Nevada corporation; General Lumber & Supply, Co., a Wisconsin corporation; Spinney Ranch Corp.; Spinney Enterprises a Partnership; and Beverly K. Walker, Treasurer and Public Trustee of the County of Park, Respondents-Appellees, Cross-Appellants.**

**No. 83CA1257.**

Colorado Court of Appeals, Div. III.

Dec. 6, 1984.

Patrick E. Kowaleski, Charles H. Richardson, Aurora, for petitioner-appellant, cross-appellee.

Leland M. Coulter, Aurora, for Commerce Group Corp.

Spurgeon, Haney & Howbert, P.C., Gregory R. Piché, Colorado Springs, for respondent-appellee, Spinney Ranch Corp.

Holm & Christensen, P.C., Jon L. Holm, Steven A. Christensen, Denver, for amicus curiae, Colorado Cattlemen's Ass'n.

BABCOCK, Judge.

The City of Aurora (Aurora) appeals the dismissal of its petition to condemn extra-territorially approximately six miles of stream fishing rights over the property of respondents (landowners). The trial court dismissed the case finding no statutory authority for this condemnation proceeding. The trial court chose not to reach the issue whether the proposed condemnation was for a public purpose. Landowner Commerce Group Corporation (CGC) cross-appeals the trial court's dismissal of its counterclaim for damages upon a theory of "wrongful condemnation." The trial court ruled that Aurora was immune from liability under § 24–10–102, et seq., C.R.S. (1982 Repl.Vol. 10). Because we agree with the rationale of the trial court, we affirm dismissal of the condemnation petition, and also elect not to address the issue of public purpose. *See Buck v. District Court,* 199 Colo. 344, 608 P.2d 350 (1980). We also affirm the trial court's dismissal of CGC's counterclaim.

## I.

To mitigate the impact upon wildlife of Aurora's construction of the Spinney Mountain Reservoir, Aurora entered into a "cooperative agreement" with the Colorado Department of Natural Resources, by which it agreed to acquire along the South Platte River in Park County "stream fishing rights for public use together with suitable access to the stream ... or perpetual easement along a minimum of 6.0 miles of natural stream to include a 25 foot right-of-way on both sides ... for a minimum of 99 years." The fishing easement and stream rights sought would have divided the landowners' property, which is located in a different county and is approximately 130 miles from Aurora. Aurora argues that the trial court incorrectly dismissed its petition because there was express and implied authority to initiate this condemnation action. We disagree.

The constitutional limitations protecting individual property rights restrain the sovereign right of condemnation, and the power lies dormant in the state until the General Assembly expressly grants such power. *Potashnik v. Public Service Co.,* 126 Colo. 98, 247 P.2d 137 (1952). The right to condemn private property, if not expressly granted by statute, can only be found through necessary implication. *Beth Medrosh Hagodol v. City of Aurora,* 126

Colo. 267, 248 P.2d 732 (1952); *Potashnik v. Public Service Co., supra.* However, there is a presumption against implication of authority for eminent domain not expressly granted by statute. If an act is silent on the subject and the power granted can be exercised without resorting to condemnation, it is presumed that the General Assembly intended that the property be acquired by contract. *Board of County Commissioners v. Intermountain Rural Electric Ass'n,* 655 P.2d 831 (Colo.1982).

Aurora contends that authority for the proposed condemnation exists in § 29–7–101(1)(a), C.R.S. (1977 Repl.Vol. 12) which provides that:

"Any city ... may *acquire,* sell, own, exchange, and *operate* public recreational facilities, open space and parklands ... acquire, equip, and maintain land, buildings, or other recreational facilities *either within or without the corporate limits of such city,* town, village, or county; and expend funds therefor and for all purpose connected therewith." (emphasis added)

■ Although § 29–7–101(1)(a), C.R.S. (1977 Repl.Vol. 12) grants municipalities the power of land acquisition it does not grant the power of eminent domain. The plain meaning of the statute, which must be given effect, authorizes municipalities only to "acquire" and to "operate" but not to condemn recreational areas. *See Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984).

■ Aurora asserts, however, that this statutorily delegated power to "acquire" and to "operate" a public recreational facility outside its corporate limits carries with it and necessarily implies the power to condemn extraterritorially such property for that purpose. We do not agree.

Section 29–7–104, C.R.S. (1977 Repl.Vol. 12) provides:

"Any municipal corporation or board given charge of the recreation system is authorized to conduct its activities on property under its custody and management; other public property under the custody of other municipal corporations or boards with the consent of such corporations or boards; and private property with the consent of the owners or without such consent as provided in this section. It has authority to accept gifts and bequests for the benefit of the recreational service, employ supervisors and directors of the recreational service and employ supervisors and directors of recreational work, take private property for the aforesaid purposes without the owner's consent upon payment of just compensation, and exercise the right of eminent domain in accordance with the provision of articles I to VII of title 38, C.R.S.1973, and other applicable laws and statutes."

Aurora argues that a reading of §§ 29–7–101 and 29–7–104, C.R.S. (1977 Repl.Vol. 12) *in pari materia* grants express authority for this condemnation. We conclude that neither section, whether read separately or *in pari materia,* explicitly grants authority for extraterritorial condemnation of fishing rights.

■ Section 29–7–101(1)(a) permits acquisition and operation of public recreational facilities outside the corporate limits of a municipality, but not by condemnation. Section 29–7–104 grants authority to a municipality to take private property for a recreational purpose by eminent domain, but does not provide for an extraterritorial taking. Even if fishing rights do create a "recreational facility," Aurora's authority, if any, for extraterritorial condemnation of private fishing rights is not expressly stated and, therefore, if such authority exists it must arise by implication.

■ We read nothing in these two sections which results in a reasonable conclusion that the General Assembly intended by necessary implication to grant municipalities extraterritorial power to condemn private fishing rights. The more reasonable construction of these sections is that the General Assembly intended to permit municipalities to acquire and to operate recreational facilities within or without their boundaries, but that they may take such

facilities by condemnation only *within* their borders. This construction is consistent with the compelling state interest in preserving inter-governmental harmony, jurisdiction, and integrity. Thus, we conclude that Aurora has failed to overcome the presumption against a necessarily implied grant of power to condemn extraterritorial private fishing rights.

Aurora also asserts that this condemnation action falls within § 31–25–201(1)(a) and (b), C.R.S. (1984 Cum.Supp.). Again, we disagree.

These subsections, enacted during the pendency of this case, amended § 31–25–201, C.R.S., by prohibiting the exercise of eminent domain for the acquisition of park and recreational purposes, if such property sought to be condemned lies more than 5 miles from the corporate limits. This prohibition is applicable to a city unless:

"(a) The exercise of its power of eminent domain to condemn property outside its corporate limits is required as a condition of a state or federal permit for construction of a new public facility; or

(b) The use of the power of eminent domain to condemn property is necessary for the acquisition of conservation sites on or contiguous to reservoir sites owned by any city or city and county."

■ Aurora asserts that these exceptions are applicable here, but we conclude it fails to qualify for either exception. In (a), Aurora's acquisition of fishing rights would have to be a condition of a state or federal construction permit for a recreational purpose. Instead, Aurora's acquisition of fishing rights is a negotiated term in an agreement that would "assist in the issuance of a dredge and fill permit," sought in conjunction with Aurora's water system. There is no requirement in the agreement that Aurora acquire the fishing rights by eminent domain. Aurora's decision to condemn, then, had nothing to do with any condition in any state or federal recreational construction permit as required by exception (a).

■ Exception (b) requires that the acquisition be for a "conservation site." We do not equate public fishing with conservation in the application of this exception. *Cf. Ottawa Hunting Ass'n v. State,* 178 Kan. 460, 289 P.2d 754 (1955). Therefore, exception (b) does not provide Aurora with an exception for extraterritorial condemnation of private fishing rights. In fact, the condemnation which Aurora seeks in this action is specifically the type that this statutory amendment was created to prohibit.

## II.

On cross-appeal CGC contends that: (1) The defense of governmental immunity is not available to Aurora; (2) if governmental immunity is a proper defense to Aurora's actions, insurance coverage acts as a waiver of such immunity; and (3) Aurora's actions are wrongful and unlawful under 42 U.S.C. § 1983. We disagree. However, in addressing these contentions we do not determine whether the counterclaim states a claim for relief for "wrongful condemnation" arising out of Aurora's commencement of an unauthorized condemnation action.

■ Section 24–10–108, C.R.S. (1982 Repl.Vol. 10) provides sovereign immunity for public entities as a defense to an action for injuries unless the exceptions specified in §§ 24–10–104 to 24–10–106, C.R.S. (1982 Repl.Vol. 10) are applicable. CGC relies upon § 24–10–106(1)(f), C.R.S. (1982 Repl. Vol. 10), which provides that sovereign immunity shall not be asserted as a defense in an action for damages for injuries resulting from the operation and maintenance of any public water facility. However, condemnation of fishing rights for recreational use does not equate with the operation of a public water facility. Thus, Aurora's actions do not fall within this exception.

■ CGC also argues that even if the exception is inapplicable, Aurora's insurance coverage acts as a waiver of the defense of sovereign immunity pursuant to § 24–10–104, C.R.S. (1982 Repl.Vol. 10). Although CGC's interpretation of the statute is correct, there is nothing in the record

which supports its contention that Aurora provides insurance coverage within the meaning of § 24–10–104. *Cf. Mason v. State*, 689 P.2d 199 (Colo.App.1984) (cert. granted October 22, 1984). In the absence of support in the record for this contention, we presume the trial court's action to be correct. *See Laessig v. May D & F*, 157 Colo. 260, 402 P.2d 183 (1965); *Loomis v. Seely*, 677 P.2d 400 (Colo.App.1983).

 Finally, CGC's counterclaim makes no reference to 42 U.S.C. § 1983 and fails to allege deprivation of any specified protected right. Thus, it fails to state a claim under 42 U.S.C. § 1983. *Griffin v. Pate*, 644 P.2d 51 (Colo.App.1982).

We find CGC's other contentions to be without merit.

Judgment affirmed.

BERMAN and METZGER, JJ., concur.