DEPARTMENT OF TRANSPORTATION, STATE OF COLORADO, and Board of County Commissioners, Pitkin County, Colorado, Petitioners–Appellees,

v.

Craig R. STAPLETON, Respondent–Appellant.

No. 02CA1586.

Colorado Court of Appeals, Div. IV.

July 3, 2003.

Rehearing Denied Aug. 7, 2003.

Certiorari Granted Jan. 12, 2004.

Ken Salazar, Attorney General, Harry S. Morrow, First Assistant Attorney General, Jennifer Mele, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee Department of Transportation, State of Colorado.

John M. Ely, County Attorney, Christopher G. Seldin, Assistant County Attorney, for Petitioner–Appellee Board of County Commissioners, Pitkin County, Colorado.

Faegre & Benson, LLP, Leslie A. Fields, John R. Sperber, M. Patrick Wilson, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge GRAHAM.

Respondent, Craig R. Stapleton, appeals the trial court's judgment granting immediate possession of his property to petitioners, the Colorado Department of Transportation (CDOT) and the Board of County Commissioners of Pitkin County. We reverse and remand.

Respondent owned approximately 23.4 acres of land in Aspen, which is adjacent to Highway 82 and located north of Buttermilk Ski Area and south of the Pitkin County Airport. For over ten years proceeding this condemnation action, respondent leased portions of his property to Buttermilk for parking purposes.

Petitioners entered into an intergovernmental agreement (IGA) for the expansion of Highway 82 from two lanes to four lanes between the Aspen Business Center and Buttermilk. One of the projects outlined in the IGA, and relevant to this appeal, was the construction of parking and transit facilities on respondent's property. The original IGA contained a provision that, following the condemnation of respondent's property, the County would lease portions of the property to Buttermilk at its "fair market value." This provision was later removed.

The long-range plan, which is outlined in the Entrance to Aspen Environmental Impact Statement, was to construct a light-rail transit station and multimodal transit facility on respondent's property to reduce traffic to Aspen. This facility would be the transfer point for skier trips and commuter bus trips into the Aspen area.

Petitioners filed a petition to condemn respondent's entire 23.4 acres for, among other things, the construction of parking and transit facilities. The petition did not delineate the anticipated value or uses to be assigned to particular parcels. After the condemnation action was filed, respondent entered into a stipulation for possession of certain parcels by petitioners in exchange for $573,750. These parcels, which are not involved in this appeal, were condemned for Highway 82 improvements and a county road relocation project. Other parcels, which are not directly involved in this appeal, were condemned for airport runway clear zones, open space, and wetland replacement or mitigation.

After an immediate possession hearing, the trial court concluded:

> [T]he predominate purpose for the acquisition of these parcels is to bring the

highway expansion project within the requirements of the Clean Air Act. . . . The provision of overflow parking to the Buttermilk Ski Area is subordinate to that public purpose. . . .

While it is true that none of the statutes relied upon by petitioners expressly grant [sic] a right to condemn for parking purposes, the evidence establishes that transit parking is required to comply with the Clean Air Act. Without compliance with the Clean Air Act, the project cannot be done. The Department of Transportation has the power to condemn for highway purposes. Where the parking is a required element of highway construction, the right to condemn for parking must therefore be necessarily implied.

The court required a deposit of $5,000,000 at the time it granted immediate possession.

After respondent sought extraordinary relief pursuant to C.A.R. 21, which was denied by the supreme court, a valuation hearing was held. A final order was entered, which also did not delineate between the parcels. This appeal followed.

I.

Respondent contends that the trial court erred in ruling that petitioners had the legal authority to condemn for parking and transit facilities. We agree.

■ It is axiomatic that the power of eminent domain is vested in the State of Colorado. Such power may not be exercised by a governmental subdivision or other entity unless the power has been delegated to it by the General Assembly, even if the purpose for which the property would be condemned is a public use within the meaning of Colo. Const. art. II, § 15. *Bd. of County Comm'rs v. Intermountain Rural Elec. Ass'n*, 655 P.2d 831 (Colo.1982); *Buck v. Dist. Court*, 199 Colo. 344, 608 P.2d 350 (1980). Thus, the power to condemn private property lies dormant with the state until the legislature confers authority. *Potashnik v. Pub. Serv. Co.*, 126 Colo. 98, 247 P.2d 137 (1952).

■ The right to condemn private property, if not expressly granted by statute, can be found only through necessary implication. However, there is a presumption against implication of authority for eminent domain. "By necessary implication" means that vague or doubtful language must be excluded. If there is doubt, then there has been no grant of such power by the state. *Beth Medrosh Hagodol v. City of Aurora*, 126 Colo. 267, 248 P.2d 732 (1952).

■ If an act is silent on the subject, and the power granted can be exercised without resorting to condemnation, it is presumed that the General Assembly intended that the entity seeking possession enter the real estate market and acquire the property by contract. *City of Aurora v. Commerce Group Corp.*, 694 P.2d 382 (Colo.App.1984).

■ In determining the scope of the condemnation power delegated, we construe the statutes narrowly and against the entity asserting the power. *Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519 (Colo. 1982); *Town of Parker v. Colo. Div. of Parks & Outdoor Recreation*, 860 P.2d 584 (Colo. App.1993).

Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To discern legislative intent, a court should look first to the statutory language. Statutory words and phrases should be given their plain and ordinary meaning. Further, the General Assembly is presumed to have knowledge of the legal import of the words it uses. *Town of Parker v. Colo. Div. of Parks & Outdoor Recreation, supra.*

A.

Petitioners contend that CDOT's authority to condemn respondent's property exists by necessary implication in §§ 43–1–208(3), 43–1–210(1), and 43–3–106, C.R.S.2002. We disagree.

1.

Petitioners contend that CDOT's authority to condemn respondent's property for "state highway purposes" is necessarily implied under § 43–1–208(3), which provides, in relevant part, that "[t]he transportation commis-

sion ... has the power and is authorized to proceed in the acquisition of the lands of private persons for state highway purposes." Specifically, petitioners state that the "transit parking serves to enhance the operational efficiency and safety of State Highway 82, was necessary for compliance with the Federal Clean Air Act and was necessary to allow CDOT to construct the project." They reason that "[w]here transit parking is an integral part of the State Highway improvement plan, CDOT's condemnation for transit parking is authorized as a 'state highway purpose.'" We are not persuaded.

"State highway" is defined as "a right-of-way or location, whether actually used as a highway or not, designated for the construction of a state highway upon it." Section 43–1–204, C.R.S.2002. A "highway" includes "bridges on the roadway and culverts, sluices, drains, ditches, waterways, embankments, retaining walls, trees, shrubs, and fences along or upon the same and within the right-of-way." Section 42–1–203, C.R.S.2002.

■ Nothing in these statutes suggests that "state highway" or "highway" refers by implication to structures not related directly to highway construction, such as parking and transit facilities.

We cannot reasonably conclude that the General Assembly intended by necessary implication to grant CDOT authority to condemn for those facilities, and thus, petitioners have failed to overcome the presumption against a necessarily implied grant of power to condemn for parking and transit facilities.

We note that the General Assembly has declined an opportunity specifically to include the powers CDOT asserts should be implied. Legislative history discloses that, in 2001, Senate Bill 01–008 was introduced, which was described, in pertinent part as follows:

Transportation Legislation Review Committee. Expands the authority of the department of transportation in connection with its powers of eminent domain, which authority is currently limited to the acquisition and disposition of property for state highway purposes, to include the acquisition and disposition of property for state transportation purposes.

The proposed bill would have expanded "State Transportation Purposes" to include "the transport of persons or property by motor vehicle, bus, truck, railroad, *light rail, mass transit, or airplane.*" Apparently, the bill died in committee, and its short-lived status augurs against our expansion of those powers by implication.

2.

■ Petitioners also assert that CDOT has authority to condemn for parking and transit facilities under § 43–1–210(1), which states, in relevant part:

Whenever a part of a parcel of land is to be taken for state highway purposes and the remainder is to be left in such shape or condition as to be of little value to its owner or to give rise to claims or litigation concerning severance or other damage, the department of transportation may acquire by purchase or condemnation the whole parcel....

Section 43–1–210(1) only applies where there has been a partial acquisition of the property and a remainder parcel is left. Here, all respondent's property has been taken for various uses, with no property remaining with respondent. Because the statute does not apply to total acquisition, it has no application here.

3.

■ Finally, petitioners assert that CDOT has authority to condemn for parking and transit facilities under § 43–3–106, which provides:

The department of transportation is authorized to purchase or condemn any land necessary for the construction of any local service road authorized by this part 1 and is also authorized to purchase or condemn any right of access appertaining to any land abutting on a state highway or on a portion of a state highway when such right of access is disturbed or destroyed by the designation of a state highway or such portion of a state highway as a freeway under the provisions of this part 1 in the same manner and form as provided by law for the purchase or condemnation of highway rights-of-way.

CDOT's power to condemn for local service roads includes no express or implied authority to condemn for parking and transit facilities.

### B.

Petitioners also contend that the County's authority to condemn respondent's property exists in §§ 43–2–112, 43–3–107, and 29–7–104, C.R.S.2002. Again, we disagree.

### 1.

■ Section 43–2–112(2) provides that "[t]he board of county commissioners ... has the power and is authorized to proceed in the acquisition of lands of private persons for county roads." Section 43–3–107 also provides that "[b]oards of county commissioners ... may join with the department of transportation to acquire by ... condemnation any land or right of access appurtenant thereto necessary for the construction of any state highway, freeway, or local road service road."

There is no express or implied authority for the County to condemn for parking and transit facilities under these statutes. Thus, we reject petitioners' assertion that the parcels condemned for county roads may also be condemned for parking and transit facilities.

### 2.

■ Petitioners also assert that the County has authority to condemn for recreational parking purposes pursuant to § 29–7–104, which provides:

Any municipal corporation or board given charge of the recreation system is authorized to conduct its activities on ... private property with the consent of the owners or without such consent as provided in this section. It has authority to ... take private property for the aforesaid purposes without the owner's consent upon payment of just compensation, and exercise the right of eminent domain in accordance with the provisions of articles 1 to 7 of title 38, C.R.S., and other applicable laws and statutes.

"Recreational facility" or "recreation system" includes "such land or interest in land as may be necessary, suitable, or proper for park or recreational purposes or for the preservation or conservation of sites, scenes, open space, and vistas of scientific, historic, aesthetic, or other public interest." Section 29–7–107, C.R.S.2002.

Parking lots and transit facilities are not recreational uses of land as defined by § 29–7–107. Furthermore, nothing in the statute suggests that land may be condemned for parking facilities because it may be used by people seeking to gain access to recreational lands. In this respect, the County's position that parking lots serve a recreational purpose is tenuous at best; the record discloses that the County advanced a wide variety of hypothetical recreational purposes, most of which were not related to County-owned activities, but were instead incidental to parking for privately-owned ski areas and anticipated transit parking. There is no evidence, for example, that trail heads converge at the parking areas.

### C.

We conclude that the General Assembly intended that when parking and transit facilities are sought, the County and CDOT be required to enter the real estate marketplace and acquire the property by contract or lease. Should the General Assembly determine to extend the County's or CDOT's powers of eminent domain to acquisition of property for parking and transit facilities, it may statutorily so direct. However, considering the historic reluctance to allow condemnation of private property where the power of eminent domain is neither express nor clearly implied by statute, *see Bd. of County Comm'rs v. Intermountain Rural Elec. Ass'n, supra; Potashnik v. Pub. Serv. Co., supra; Mack v. Town of Craig,* 68 Colo. 337, 191 P. 101 (1920), as well as the legislative history denying CDOT's attempt to expand its eminent domain powers to "state transportation purposes," we decline to recognize such a power in petitioners. To do so would usurp the General Assembly's sole authority under the constitution to delegate the power of eminent domain.

## II.

In view of our resolution, we need not address respondent's remaining contentions.

The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge NIETO and Justice ERICKSON * concur.