COLORADO COURT OF APPEALS
 
 2016 COA 17
 
 

Court of Appeals No. 14CA1505
Summit County District Court No. 12CV18 
Honorable Thomas W. Ossola, Judge

Town of Silverthorne, a Colorado home rule municipality, Summit County, Colorado,

Plaintiff-Appellee,

v.

Matthew F. Lutz and Edward R. Lutz, 

Defendants-Appellants.

JUDGMENT AFFIRMED
Division VI
Opinion by JUDGE MILLER 
Ashby and Sternberg*, JJ., concur

Announced February 11, 2016

Hoffmann Parker Wilson & Carberry, P.C., M. Patrick Wilson, Denver, Colorado, for Plaintiff-Appellee

Fowler Shimberg & Flanagan, P.C., Timothy J. Flanagan, Steven W. Fox, Denver, Colorado, for Defendants-Appellants

Holland & Hart, LLP, Marcy G. Glenn, Michael J. Carrigan, Denver, Colorado, for Amicus Curiae State Board of the Great Outdoors Colorado Trust Fund

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶1          In this eminent domain action, respondents, Matthew F. Lutz and Edward R. Lutz (landowners), appeal the judgment in favor of petitioner Town of Silverthorne, a home rule municipality. The landowners contend that the trial court erred by excluding evidence of the Town’s Great Outdoors Colorado Program (GOCO) funds from the immediate possession hearing. They argue that this evidence was relevant to the Town’s authority to condemn the land because the GOCO amendment, article XXVII, section 9 of the Colorado Constitution, bars a GOCO fund recipient from using its funds to acquire property by condemnation. The landowners also argue that the trial court erroneously denied their motion for attorney fees. We conclude that the trial court did not err in deciding these issues and, therefore, we affirm.

I. Background

¶2          Some years prior to the commencement of this action, the
Town undertook to construct the Blue River Trail (Trail), a network of trails for nonmotorized transportation along the Blue River corridor within the Town’s borders. The Town sought to acquire land and easement rights for the Trail along the Blue River, including land located on private property. In addition, the Town applied for and received funds from GOCO.

¶3          The GOCO amendment provides that “the net proceeds of
every state-supervised lottery game . . . shall be guaranteed and permanently dedicated to the preservation, protection, enhancement, and management of the state’s wildlife, park, river, trail and open space heritage.” Colo. Const. art. XXVII, § 1(1). The State Board of the Great Outdoor Colorado Trust Fund (GOCO Board), a political subdivision of the state of Colorado, dispenses GOCO funds from a trust fund. See id. at §§ 2, 6. However, section 9 of the GOCO amendment provides that “[n]o moneys received by any state agency pursuant to this article shall be used to acquire real property by condemnation through the power of eminent domain.” Id. at § 9.

¶4          The Town commenced the project by building portions of the
Trail to the north and south of an area that includes the landowners’ property. The Town determined that it wanted to connect the Trail through this area by building a path over a previously existing easement that provided a pedestrian walkway along the river. It called this part of the Trail “Segment 5.” The landowners and some of their neighbors who would be affected by this plan sued the Town in a quiet title action seeking declaratory and injunctive relief. They sought to enjoin the Town from constructing the Trail over the existing walkway. The Town counterclaimed for declaratory relief and quiet title, seeking a decree that it had the legal right to construct Segment 5 of the Trail over the walkway. The Town unsuccessfully attempted to settle the quiet title action. The district court granted the injunction in part, first preliminarily and then permanently enjoining the Town from undertaking any demolition, preconstruction, or construction activities on Segment 5.

¶5          Before the district court issued the permanent injunction, the
Town made a written offer of $6,000 to the landowners to acquire easement rights on a strip of land adjacent to the walkway (adjacent strip) to construct the Trail. The landowners did not accept or make a counteroffer, and the Town then filed a petition in condemnation to acquire the easement rights over the adjacent strip under its eminent domain authority.

¶6          Thereafter, the Town sought to acquire an additional Public
Trail Overlay Easement located within the existing walkway. The Town made a written offer to the landowners of $75,000 for both easements ($69,000 for the overlay easement rights plus the original $6,000 for the adjacent strip easement rights). When the landowners did not accept the offer or make a counteroffer, the Town amended its condemnation petition to include both easements, which the court granted.

¶7          The matter proceeded to an immediate possession hearing and
a subsequent valuation trial. The district court granted the Town’s motion for immediate possession, and the landowners were compensated according to the jury’s valuation.

II. Waiver of Defense

¶8          The Town initially argues that the landowners waived any
challenge to the condemnation proceedings, other than challenges to the amount of compensation, by failing to file an answer within the twenty-one days provided in C.R.C.P. 12.

¶9          The Town filed its petition in condemnation on January 13,
2012, and served it on the landowners on January 23. Counsel for the landowners filed an entry of appearance and jury demand on January 31, 2012. The landowners then filed a motion to dismiss the petition on March 1, 2012. The Town filed a response to the motion to dismiss, in which it argued, among other things, that the landowners had waived their defenses to condemnation by failing to file a timely answer. The landowners filed a reply, in which they briefed the issue. In its order dated April 6, 2012, the district court converted the landowners’ motion to dismiss into a motion for summary judgment and ordered the Town to file a surresponse within fourteen days and the landowners to submit a surreply seven days thereafter. The court also ordered the landowners to file an answer to the petition within fourteen days.

¶10          We assume without deciding that the landowners’ motion to dismiss and answer were filed out of time. But see M. Patrick Wilson, Eminent Domain Law in Colorado, 35 Colo. Law. 65, 72 (2006) (“Technically, there is no need to file an answer in a condemnation case, but it is good practice to do so.”) (footnote omitted). C.R.C.P. 6(b)(2) gives the court discretion to accept a motion filed past the time period set forth in other rules of civil procedure “where the failure to act was the result of excusable neglect.”

¶11          We perceive the court’s April 6, 2012 order as an exercise of its
discretion under C.R.C.P. 6(b)(2). By ordering the landowners to file their answer within fourteen days of the issuance of the conversion order, the court exercised its discretion and indicated that it had considered and denied the Town’s waiver argument.

¶12          We conclude that the court did not abuse its discretion when it ordered the filing of an answer. The Town neither asserts that the court abused its discretion in ordering the landowners to file an answer nor explains how the relatively short delay caused it any prejudice. The landowners’ jury demand, filed within the twenty-one day period, as well as the parties’ long history of conflict concerning the Trail, placed the Town on notice that the landowners intended to contest the condemnation. Their motion to dismiss advised the Town of their defenses, and the trial court did not rule on the defenses until more than a year after the motion and answer were served, following extensive briefing.

¶13           Accordingly, the landowners did not waive their right to contest the proceedings in the district court.[1]

III. Source of Funds

A. Posture of the Issue

¶14          In their motion to dismiss, the landowners argued that the Town’s use of GOCO funds on the Trail barred the Town’s exercise of eminent domain power to acquire the easement rights over the landowners’ property. After the district court converted the motion to dismiss into a motion for summary judgment, the parties submitted briefs on the issue of GOCO fund evidence. On April 29, 2013, the Town filed a motion in limine to exclude evidence of project funding sources from the immediate possession hearing. The court granted the motion in limine and excluded that evidence from the immediate possession hearing, taking as true the landowners’ allegations concerning the source of the funds and determining that “[c]ondemnation is a special statutory proceeding in which the funding sources for the condemnation are not to be considered.” The court never expressly ruled on the motion for summary judgment. Rather, by accepting as true the landowners’ factual allegations concerning the GOCO funds, it decided the issue in the context of the in limine motion as a matter of law, effectively denying or mooting the summary judgment motion.

¶15          The landowners nonetheless argue that the trial court erred in granting the Town’s motion in limine to exclude evidence of the source of the funds with which the Town would pay for the property it sought to condemn. If this evidence had been admitted, they argue, it would have shown that the Town was precluded from condemning the landowners’ land. We are not persuaded.

B. Standard of Review

¶16          We review a district court’s grant of a motion in limine excluding evidence for an abuse of discretion. Palizzi v. City of Brighton, 228 P.3d 957, 962 (Colo. 2010) (condemnation proceeding). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. Id. A trial court also abuses its discretion when it erroneously applies the law. Vanderpool v. Loftness, 2012 COA 115, ¶19. The landowners make two separate arguments related to the evidence concerning GOCO funds. We address and reject each in turn.

C. GOCO Funds as Evidence of the Town’s Authority to Condemn

¶17          The landowners first contend that they wanted the trial court to review the constitutional and statutory issue of the source of funds to determine if the Town’s use of funds would have prevented it, as a matter of law, from pursuing the condemnation of the landowners’ land. In essence, the landowners are challenging the Town’s authority to condemn their land based on what the landowners describe as a misuse of GOCO funds.

¶18          As a home rule municipality, the Town has authority to exercise eminent domain powers under article XX, the home rule article of the Colorado Constitution. See City of Thornton v. Farmers Reservoir & Irrigation Co., 194 Colo. 526, 534, 575 P.2d 382, 388-89 (1978) (citing Colo. Const. art. XX, §§ 1, 6). The home rule article grants home rule municipalities the authority to condemn property for open spaces and parks, among other purposes. Town of Telluride v. San Miguel Valley Corp., 185 P.3d 161, 165 (Colo. 2008). The trial court found, and the parties do not dispute, that section 14.3 of the Town Charter grants the Town the power of eminent domain under article XX.

¶19          During a condemnation proceeding, an entity seeking to condemn private property may move for immediate possession of the land, to be determined in an immediate possession hearing. Glenelk Ass’n, Inc. v. Lewis, 260 P.3d 1117, 1122 (Colo. 2011) (citing §§ 38-1-105(6), 38-1-106, C.R.S. 2010). The party whose land is sought may raise constitutional objections and the court may address them in limine. Auraria Businessmen Against Confiscation, Inc. v. Denver Urban Renewal Auth., 183 Colo. 441, 445, 517 P.2d 845, 847 (1974); see also § 38-1-101(2)(a), C.R.S. 2015 (“All questions and issues, except the amount of compensation, shall be determined by the court[.]”). “If the trial court concludes that the condemnor has established the right to condemn the property in question, it may grant immediate possession of the property.” Lewis, 260 P.3d at 1122 (emphasis added).

¶20          In an immediate possession hearing, a district court hears challenges to a public entity’s condemnation based on an alleged lack of authority. See Dep’t of Transp. v. Stapleton, 97 P.3d 938, 939 (Colo. 2004) (district court addressed whether petitioners had legal authority to condemn the property); Potashnik v. Pub. Serv. Co., 126 Colo. 98, 99-100, 247 P.2d 137, 138 (1952) (party contesting the condemnation responded to petition with motion to dismiss contending that the condemnor had no authority to condemn). However, during condemnation proceedings, district courts may not consider the source of the condemning authority’s funds. See Pub. Serv. Co. v. City of Loveland, 79 Colo. 216, 233, 245 P. 493, 500-01 (1926). As the supreme court explained in City of Loveland, “these questions present details of corporate finance that are wholly alien to a special statutory condemnation proceeding and they are not cognizable here.” Id. Condemnation actions are special statutory proceedings that must be conducted strictly according to statutory procedures, Story v. Bly, 217 P.3d 872, 876 (Colo. App. 2008), aff’d, 241 P.3d 529 (Colo. 2010), “and no issue can be injected into the case which will change its character,” City of Loveland, 79 Colo. at 234, 245 P. at 501 (citation omitted). The supreme court in City of Loveland made clear that evidence pertaining to project funding sources is the type of evidence which must be excluded under this reasoning. Id.

¶21          Despite the landowners’ arguments to the contrary, City of Loveland controls. They argue that City of Loveland does not apply to the present case because it concerned a municipal ordinance and not a constitutional amendment and because the GOCO constitutional amendment was ratified sixty-six years after the City of Loveland decision. We do not perceive either argument to be persuasive. The party opposing the condemnation in City of Loveland made an argument identical to the landowners’ contention here — that the condemning authority’s use of funds was in contravention of existing law. See id. at 231-32, 245 P. at 500. Whether that law is set forth in a municipal ordinance, Colorado statutes, or the constitution makes no difference; evidence on project funds sourcing is simply inadmissible in a condemnation proceeding. Id. at 233-34, 245 P. at 501.

¶22          Landowners essentially ask us to circumvent the holding in City of Loveland by arguing that section 9 of the GOCO amendment makes evidence of project funding relevant to the Town’s authority to condemn. In support of this contention, they argue that section 9’s prohibition on the use of GOCO funds “to acquire real property by condemnation” should be construed to include not just condemnation of land, but also “the planning, engineering and surveying necessary to determine the alignment” of the taking, “as well as the legal, engineering, surveying and appraisal fees necessary to prosecute an eminent domain proceeding.” The landowners assert that, under this reading of section 9, the Town’s use of GOCO funds to plan the entire Trail and to build portions outside of Segment 5 renders the Town ineligible to exercise its eminent domain powers to condemn any land for the project. The Town and GOCO, as amicus curiae, counter that section 9 of the GOCO amendment does not strip the Town of its condemnation authority once it has accepted GOCO funds for a particular project because the word “acquire” in section 9 means only to pay just compensation for condemned property.

¶23          This presents a question of constitutional interpretation. The interpretation of a constitutional provision is a question of law reviewed de novo. Bruce v. City of Colorado Springs, 129 P.3d 988, 992 (Colo. 2006). When interpreting a constitutional amendment, we should give effect to the intent of those who adopted it. Grossman v. Dean, 80 P.3d 952, 962 (Colo. App. 2003). “When, as here, the provision was adopted by popular vote, we must determine what the voters believed the language of the amendment meant when they approved it, by giving the language the natural and popular meaning usually understood by the voters.” Id. We must also consider the amendment as a whole. Indep. Inst. v. Coffman, 209 P.3d 1130, 1136 (Colo. App. 2008). If the language is clear and unambiguous, we enforce it as written. Colo. Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶20. We also apply general rules of statutory construction in construing a citizen-initiated measure. Huber v. Colo. Mining Ass’n, 264 P.3d 884, 889 (Colo. 2011).

¶24          Section 9 forbids the use of GOCO funds to “acquire real property by condemnation through the power of eminent domain.” Colo. Const. art. XXVII, § 9 (emphasis added).

¶25          The term “acquire” means “to come into possession, control, or power of,” Webster’s Third New International Dictionary Unabridged 18 (2002), or “to get or obtain,” Black’s Law Dictionary 28 (10th ed. 2014). See also Reg’l Transp. Dist. v. Outdoor Sys., Inc., 34 P.3d 408, 415 (Colo. 2001) (construing the word “acquire” in section 24­56-101, C.R.S. 2001, which provides for “fair and equitable treatment [to] persons displaced by the acquisition of real property by state agencies”).[2]

¶26          Section 9 uses the word “acquire” in conjunction with the act of condemning property through eminent domain. Condemnation through eminent domain, as explained above, is the Town’s power to pay just compensation in exchange for the immediate possession of property. See Lewis, 260 P.3d at 1122. Thus, under its plain meaning, this constitutional language imposes the limitation that the Town may not use GOCO funds to pay just compensation for property that it has condemned. Thus, section 9 does not concern the costs related to planning or implementing a taking, or construction on other sites.

¶27          Our view in this regard is not affected by the fact that the GOCO amendment was adopted by the voters some sixty-six years after the supreme court decided City of Loveland. The landowners have cited no authority overruling City of Loveland, and we are aware of none. To the contrary, more recent decisions have continued to recognize that such collateral matters may not be heard in a condemnation proceeding. See Pub. Serv. Co. v. Shaklee, 784 P.2d 314, 316-17 (Colo. 1989) (failure of public utility to obtain a certificate of public convenience and necessity did not preclude proceeding with a condemnation action); Silver Dollar Metro. Dist. v. Goltra, 66 P.3d 170 (Colo. App. 2002) (obtaining development permits or approvals is not a condition precedent to a condemnation proceeding). Thus, the Town was not precluded from condemning the landowners’ property because it used GOCO funds on other portions of the Trail, evidence of funding was not relevant to the Town’s authority to condemn the landowners’ land, and the district court properly excluded evidence related to the Town’s use of GOCO funds from the immediate possession hearing.

D. GOCO Funds as Evidence of the Town’s Bad Faith

¶28          The landowners also contend that the evidence that the Town misused GOCO funds would have shown that the Town acted in bad faith prior to the lawsuit by planning its development of the Trail in such a way as to receive all of the GOCO funds it could before proceeding with eminent domain actions. The landowners argue that this evidence is a “jurisdictional challenge” to the Town’s condemnation suit.

¶29          There are two requirements of good faith in eminent domain proceedings. First, “[g]ood faith negotiations are a jurisdictional prerequisite to the initiation of condemnation proceedings.” City of Holyoke v. Schlachter Farms R.L.L.P., 22 P.3d 960, 963 (Colo. App. 2001) (citing section 38-1-102(1), C.R.S. 2015, which says eminent domain proceedings cannot be instituted unless compensation for the property “cannot be agreed upon by the parties interested”); see also § 38-1-121(3), C.R.S. 2015 (The condemning authority must “negotiate in good faith for the acquisition of any property interest sought prior to instituting eminent domain proceedings.”). Second, if those negotiations fail and the condemning authority initiates judicial eminent domain proceedings, the condemnor bears the burden of proving necessity for the requested land. Lewis, 260 P.3d at 1122. Once necessity is determined by legislative act, no further adjudication is required. Goltra, 66 P.3d at 172. Absent a finding of fraud or bad faith, we will not review a condemning authority’s determination of necessity. Id. We address each of these “good faith” requirements in turn.

1. Good Faith Negotiations

¶30          When negotiating with the owner of the property it seeks to condemn, the condemning authority must make a reasonable, good faith offer and allow the owner sufficient time to respond. See Sheridan Redevelopment Agency v. Knightsbridge Land Co., L.L.C., 166 P.3d 259, 266 (Colo. App. 2007); City of Holyoke, 22 P.3d at 963. No actual negotiation is required, the parties need not speak face-to-face, and the property owner is not required to respond or make a counteroffer. See City of Holyoke, 22 P.3d at 963; Bd. of Cty. Comm’rs v. Blecha, 697 P.2d 416, 417-18 (Colo. App. 1985).

¶31          The landowners allege that the Town’s offer to them and others on September 30, 2011, for a lump sum of $400,000, or $50,000 per landowner, was a bad faith offer because it allowed the Town to use the GOCO funds for the project and because the offer was for an amount less than the $500,000 the Town received from GOCO.

¶32           There are several problems with this argument:

 To begin with, the September 2011 lump sum offer was a proposal for a global settlement with a group of plaintiffs, including the landowners, who had sued the Town in the quiet title action. It predated the $6,000 and $75,000 offers, both of which were in excess of the appraised market values and were made to the landowners in connection with the eminent domain proceeding. Thus, to the extent the $400,000 global settlement offer is relevant at all to the good faith negotiation requirement in section 38-1-121(3), it was superseded by the subsequent offers that were made in good faith. See Sheridan Redevelopment Agency, 166 P.3d at 266 (agency met good faith negotiation requirement when it made two separate offers in excess of appraised values and the respondents declined to accept either).
 Assuming the truth of the landowners’ allegations regarding the reasons for the offer, landowners do not explain how those allegations establish bad faith. We do not perceive any bad faith in the Town’s desire to avoid the cost of an eminent domain suit and retain the ability to pay for the easements with GOCO funds.
 The easement rights at issue in this case were ultimately valued by the jury together at approximately $39,000, substantially less than the $50,000 per landowner offered in the September 2011 settlement offer. The landowners have not explained how an offer that exceeded the actual value of the easement rights by more than twenty percent was made in bad faith.
 The landowners also do not explain why the Town’s failure to offer all of the GOCO funds constituted bad faith. The September 2011 offer states that the appraised market value of the property rights to be acquired was anticipated to be substantially less than the settlement offer. The jury’s verdict establishes the accuracy of that statement. Thus, the fact that the Town may have had more money to spend is not relevant to its good faith in making the global settlement offer.

¶33          Accordingly, nothing alleged by the landowners, when taken as true, shows that the Town failed to negotiate in good faith. 2. Good Faith Necessity

¶34          The second requirement of good faith is that the condemning authority act in good faith in determining the necessity of the project. “The question of necessity simply involves the necessity of having the property sought to be taken for the purpose intended.” Goltra, 66 P.3d at 172; see also Mortensen v. Mortensen, 135 Colo. 167, 170-71, 309 P.2d 197, 199 (1957).

¶35          The landowners allege that the Town: (1) misrepresented to GOCO that it had ownership and control of the property necessary to build Segment 5 when it applied for the funds, knowing at the time that the landowners were challenging the eminent domain proceedings; (2) attempted to build the Trail on the existing public access walkway to avoid paying for additional land; (3) built the project in segments near the landowners’ land, making it necessary to acquire the landowners’ land through eminent domain, while knowing that the landowners would oppose it; and (4) did not consider alternative locations for the Trail.

¶36          Assuming that the Town misrepresented its ownership of the property to GOCO in order to obtain the funds, such a misrepresentation to GOCO would have no bearing on whether the landowners’ property was necessary for the construction of the project. See Goltra, 66 P.3d at 172. The landowners’ remaining allegations concern the Town’s process in determining the location of the Trail. A decision to condemn property at a particular location may constitute bad faith if its primary purpose was to benefit a member of the condemning authority, see Denver West Metro. Dist. v. Geudner, 786 P.2d 434, 436-37 (Colo. App. 1989), or for some other improper purpose. The landowners have not shown that the Town’s decision to build the Trail easements over the landowners’ property, instead of at another location more distant from the river, constituted bad faith. They do not allege that the primary purpose of the location decision was to advance private interests or was otherwise similarly improper. Accordingly, the facts alleged by the landowners do not establish a bad faith basis for the location decision.

¶37          We therefore determine that the district court properly excluded evidence related to the Town’s GOCO funds.

IV. Attorney Fees

¶38          Finally, we consider and reject the landowners’ contention that the district court erred by denying their motion for attorney fees. A. Standard of Review

¶39          We review the propriety of awarding attorney fees in eminent domain proceedings for an abuse of discretion by the trial court. Sch. Dist. No. 12 v. Sec. Life of Denver Ins. Co., 185 P.3d 781, 786­87 (Colo. 2008). A trial court abuses its discretion if its actions are manifestly arbitrary, unreasonable, or unfair, or if it erroneously applies the law. Id.; Loftness, ¶19.

B. Law and Analysis

¶40          Section 38-1-122(1.5), C.R.S. 2015, provides that in a
condemnation action 

the condemning authority shall reimburse the owner whose property is being acquired or condemned for all of the owner’s reasonable attorney fees incurred by the owner where the award by the court in the proceedings equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action.

(Emphasis added.)

¶41          The Town made an offer to the landowners for the adjacent strip easement rights for $6,000, and filed a petition in condemnation of those easement rights on January 13, 2012. On November 27, 2012, the Town made a written offer to the landowners for both the overlay easement rights and the adjacent strip easement rights for $75,000. The Town then amended its petition to include both easements on February 25, 2013. The valuation jury valued the property at $38,259 — $6,019 for the adjacent strip easement and $32,240 for the overlay easement.

¶42          The landowners argue that under section 38-1-122(1.5), the court may consider only the $6,000 offer made before the Town filed the petition in condemnation. They argue that we cannot consider the $75,000 offer because it was made after the town filed its petition.

¶43          The supreme court, however, rejected that position in Security Life of Denver Insurance Company, 185 P.3d at 791. The court there held that when a condemnation petition is amended to reflect both the property described in the original petition and a newly added property, the last written offer is the offer made to the property owner for both properties prior to the filing of the amended petition. Id. That holding controls the present case.[3]

¶44          Therefore, the last written offer for the purposes of
determining attorney fees was the Town’s $75,000 offer. Because the jury award does not exceed the last written offer by one hundred thirty percent, we conclude that the district court did not abuse its discretion in denying the landowners’ motion for attorney fees. Id.

V. Conclusion

¶45          The judgment is affirmed.

JUDGE ASHBY and JUDGE STERNBERG concur.

[1] We also decline to revisit a denial of the Town’s motion to dismiss made by a motions division of this court. See Jenkins v. Haymore, 208 P.3d 265, 267 (Colo. App. 2007), and we accordingly conclude that we have subject matter jurisdiction to hear this appeal.

[2] The supreme court in Regional Transportation District v. Outdoor Systems, Inc., 34 P.3d 408, 415 (Colo. 2002), said the word “acquisition” is “susceptible to multiple and divergent interpretations.” However, the ambiguity perceived by the court arose from the connotation that possession could be obtained by condemnation, purchase, lease, or gift. See id. Section 9 leaves no ambiguity in this regard, as it relates only to obtaining possession by “condemnation through the power of eminent domain.” Colo. Const. art. XXVII, § 9.

[3] In support of their argument, the landowners cite E-470 Public Highway Authority v. Wagner, 77 P.3d 902, 904-05 (Colo. App. 2003), and E-470 Public Highway Authority v. Kortum Investment Co., LLLP, 121 P.3d 331, 334 (Colo. App. 2005). To the extent those cases remain good law, neither involves a new written offer submitted before amending the petition, as occurred in School District Number 12 v. Security Life of Denver Insurance Co., 185 P.3d 781, 791 (Colo. 2008), and in this case.