**Alf TIEZE, Plaintiff–Appellee,**

v.

**Allen P. KILLAM and Ruth D. Killam, Defendants–Appellants.**

**No. 04CA2442.**

Colorado Court of Appeals,
Div. VI.

Jan. 25, 2007.

Letofsky & Dombroski, Steven F. Letofsky, Frisco, Colorado, for Plaintiff–Appellee.

Holland & Hart LLP, Robert A. Basset, Todd W. Miller, Greenwood Village, Colorado, for Defendants–Appellants.

Opinion by Judge J. JONES.

Defendants, Allen P. and Ruth D. Killam, appeal the trial court's declaratory judgment that plaintiff, Alf Tieze, may condemn a private way of necessity across their property pursuant to art. II, § 14 of the Colorado Constitution. We affirm.

## I. Background

In 1993, Tieze purchased the Hannibal Mill Site in Summit County, Colorado, which is an in-holding completely surrounded by the White River National Forest. The Killams own the nearby Itaska Mill Site, a property that is accessed by a public road known as the Webster Pass Road. An abandoned, unpaved mining road, referred to by the parties as the "Itaska Route," runs from Webster Pass Road across the Itaska Mill Site and National Forest land to the Hannibal Mill Site. No other existing roads access the Hannibal Mill Site.

In 2000, Tieze placed fill material and culverts in wetlands along the Itaska Route and widened it to allow for practical access to the Hannibal Mill Site. Tieze did not have permission from either the United States Forest Service or the Killams to perform that work.

In April 2001, Tieze applied to the Summit County Board of Adjustment for a minimum size lot variance on the Hannibal Mill Site to permit him to build a single family dwelling. The Board conditionally approved Tieze's request on December 19, 2001. Among those conditions are that Tieze must obtain access to a public road and the roadway from his property must meet County standards (for example, it must be at least fourteen feet

wide, with turnouts, and with an appropriate road base).

On June 29, 2001, Tieze filed an application with the Forest Service for the issuance of a special use permit granting him access across National Forest land via the Itaska Route. *See* 36 C.F.R. § 251.54 (setting forth the application and decision process). The request was made pursuant to provisions of the Alaska National Interest Land Conservation Act of 1980 (ANILCA), 16 U.S.C. §§ 3101 to 3233, which authorizes the Forest Service to provide access to privately held in-holdings so as to allow landowners the "reasonable use and enjoyment" of their properties. Indeed, ANILCA requires the Forest Service to allow such access if requested, subject, however, to requirements of other federal environmental and land use statutes, as well as statutory and regulatory procedures and conditions. *See* 16 U.S.C. § 3210; *Adams v. United States*, 255 F.3d 787, 795 (9th Cir. 2001); *United States v. Jenks*, 22 F.3d 1513, 1516 (10th Cir.1994) (*Jenks I*). Among the federal statutes applicable to requests for access under ANILCA are the National Historic Preservation Act, 16 U.S.C. § 470, et seq.; the Endangered Species Act, 16 U.S.C. § 1531, et seq.; the Clean Water Act (CWA), 33 U.S.C. § 1294, et seq.; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq.; the Clean Air Act, 42 U.S.C. § 7401, et seq.; and the Federal Land Policy and Management Act, 43 U.S.C. § 1701, et seq.

Before the Forest Service could grant Tieze access across the National Forest, it was statutorily required to complete a detailed analysis, known as an Environmental Assessment (EA), pursuant to NEPA. The EA must evaluate a reasonable range of alternatives to the proposed use of the public lands and evaluate the impacts of the various alternatives. The Forest Service must then consider the EA and determine the best alternative. In ultimately issuing a special use authorization for access over National Forest land, the Forest Service "shall authorize only those access facilities or modes of access that are needed for the reasonable use and enjoyment of the land and that minimize the impacts on the Federal resources." 36 C.F.R.

§ 251.114(a); *see also* 42 U.S.C. § 4332; 36 C.F.R. §§ 251.54, 251.110 to 251.114.

The EA prepared by the Forest Service in January 2003 in response to Tieze's application identified six potential access routes. Two were entirely over National Forest land. These two did not receive detailed consideration because they were deemed to have significant environmental impacts, and, in any event, the Army Corps of Engineers had indicated that because of those impacts and the existence of an acceptable alternate route, it would not issue the construction permits required by § 404 of the CWA for either route.

The other four potential access routes considered in the EA cross private land as well as National Forest land. They included the Itaska Route; a route that begins over the Itaska Route, takes a detour from the Itaska Route while over National Forest land, and then crosses the Killams' property by way of the Itaska Route; a route proposed by the Killams (who participated in the permitting process) that crosses National Forest land and land privately owned by others; and another route that crosses both National Forest land and land privately owned by others.

The EA considered these four potential access routes in light of their physical and economic requirements and impacts, and taking into account the requirements of various federal statutes. Because the Itaska Route had the least environmental impact, used existing impact corridors, had minimal impact on the area's wetlands, and was already burdened by an existing utility easement, the EA designated it as the "preferred alternative"—that is, the alternative which best satisfied the statutory and regulatory criteria.

On May 20, 2003, the Forest Service issued a Decision Notice conditionally approving the issuance of a special use permit for Tieze to access the Hannibal Mill Site over National Forest land by the Itaska Route. The special use authorization was conditioned on Tieze's obtaining legal access across the portion of the Itaska Route that crosses the Itaska Mill Site and on his demonstrating "the technical ability to implement the reconstruction activities to upgrade the existing

four-wheel drive road ... to National Forest Service standards for a private driveway."

The Killams administratively appealed the Decision Notice, and the Forest Service denied that appeal in a letter of decision dated August 8, 2003. The Killams did not pursue any further appeal or challenge to the Decision Notice.

To obtain legal access across the portion of the Itaska Route that crosses the Itaska Mill Site, Tieze commenced this action against the Killams on April 18, 2002, seeking a declaratory judgment that he is entitled to condemn a private way of necessity under art. II, § 14 of the Colorado Constitution. The case was tried to the court. The trial court found that Tieze has the right to condemn a private way of necessity across the Itaska Mill Site under art. II, § 14 and pursuant to the procedures set forth in § 38–1–101, et seq., C.R.S.2006. The Killams appeal that ruling.

## II. Applicable Law

Article II, § 14 of the Colorado Constitution provides:

> Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes.

The statutory counterpart to this constitutional provision, § 38–1–102(3), C.R.S.2006, is substantially similar to art. II, § 14.

■ "Private ways of necessity" are " 'passageways or roadways necessary in the sense that they are indispensable to the practical use of the property for which they are claimed....' " *Bear Creek Dev. Corp. v. Dyer*, 790 P.2d 897, 899 (Colo.App.1990) (quoting *Crystal Park Co. v. Morton*, 27 Colo.App. 74, 81, 146 P. 566, 569 (1915)). However, "the 'necessity' need not be absolute, but rather the way must be 'reasonably necessary under the facts and circumstances of the case.' " *Bear Creek Dev. Corp. v. Genesee Foundation*, 919 P.2d 948, 951 (Colo. App.1996) (quoting in part *West v. Hinksmon*, 857 P.2d 483, 487 (Colo.App.1992)).

■ If a prospective condemnor establishes necessity for a private way of access, the party who seeks to avoid condemnation may do so by showing an alternate route over property owned by someone else. The party seeking to avoid condemnation "has the burden of pleading and proving that an acceptable alternate route exists and that the [prospective condemnor] has a present enforceable right to use it." *Freeman v. Rost Family Trust*, 973 P.2d 1281, 1284 (Colo.App. 1999); *accord West, supra*, 857 P.2d at 487. Even if such an alternate route exists, however, "an action for a way of necessity may still lie if the alternate route is impractical, unreasonable, or prohibited by cost grossly in excess of the value of the dominant estate." *West, supra*, 857 P.2d at 486. The party seeking to avoid condemnation also bears the burden of proof with respect to these considerations of practicality and cost. *West, supra*, 857 P.2d at 486.

## III. Application of the Law to the Facts

### A. Necessity

■ The record supports the trial court's factual determination that Tieze established that the way of necessity is "reasonably necessary under the facts and circumstances of the case." The Hannibal Mill Site is landlocked. It is now approved for residential use, which, it is undisputed, is the best, most reasonable use of the property. Hence, some access by road is necessary. Indeed, such access is required by Summit County. Access has been conditionally approved by the Forest Service over the only road that provides access to the property, the Itaska Route. It is further undisputed that Tieze has no common law or other legal right to access over the Itaska Route specifically or over any other route entirely on his property or on his property and the Killams' property. Tieze therefore made out a prima facie case for a private way of necessity over the Itaska Route under art. II, § 14.

The Killams contend, however, that because ANILCA gives Tieze a "basis of access" to his property, he did not show a "necessity" for a private way over the Itaska Route. We disagree.

■ In contending that Tieze has a "basis of access" under ANILCA, the Killams do not identify any specific alternate route. Any such route, however, would necessarily cross National Forest land and, perhaps, land privately owned by others. Thus, the Killams' reliance on the principle that a private way of necessity is unavailable where the owner of the landlocked parcel has access to his property by common law or other legal means, *see State Dep't of Highways v. Denver & Rio Grande Western R.R.*, 789 P.2d 1088, 1092 (Colo.1990) (*State Dep't of Highways II*), is misplaced. In this context, the common law or other legal means refers to situations in which the owner of the landlocked parcel has alternate access over *his own property or over the prospective condemnee's property* by virtue of a common law right, such as an easement, or other legal means. *See State Dep't of Highways II, supra*, 789 P.2d at 1092; *Billington v. Yust*, 789 P.2d 196, 198 (Colo.App.1989) (owner of landlocked parcel had common law way of necessity over prospective condemnee's land); *State Dep't of Highways v. Denver & Rio Grande Western R.R.*, 757 P.2d 181, 183 (Colo.App.1988) (property accessible without a private way of necessity), *aff'd, State Dep't of Highways II, supra; LeSatz v. Deshotels*, 757 P.2d 1090, 1092 (Colo.App.1988) (property owner had reasonable access over his own property); *Crystal Park Co., supra*, 27 Colo. App. at 85, 146 P. at 570–71.

The Killams' contention is, in essence, that Tieze has an alternate route of access over property of one or more third parties. We conclude that contention is cognizable only in the context of rebutting Tieze's showing of necessity, as to which the Killams have the burden of proof. *See West, supra*, 857 P.2d at 487.

### B. Alternate Route of Access

We further conclude that the trial court's determination that the Killams did not satisfy their burden of proof to rebut Tieze's showing of a right to a private way of necessity under art. II, § 14 is not clearly erroneous.

■ The Killams rely entirely on the fact that ANILCA requires the Forest Service to allow Tieze access to his property. Fundamentally, the Killams' reliance on ANILCA fails because Tieze does not have a right to any particular route under that statute (and the Killams have not identified one), much less a "present enforceable" right to use one.

The threshold right of access conferred by ANILCA is subject to regulations and conditions. *Adams, supra*, 255 F.3d at 795; *Jenks I, supra*, 22 F.3d at 1516. At present, Tieze's right under ANILCA to a route other than that which the Forest Service conditionally approved in the Decision Notice is merely inchoate. Tieze cannot simply designate any particular alternate route over National Forest land and insist that the Forest Service allow him access over it.

While Tieze would be entitled under ANILCA to some other route of access should he be unable to obtain access over the Killams' property, that alternate access would be conditional. The two routes that do not cross the Killams' property considered in detail by the Forest Service (including the route proposed by the Killams) would require access over other privately owned property. Thus, any special use permit granted by the Forest Service involving those routes would include the precise condition at issue here— obtaining access over the privately owned property through other legal means. Were we to accept the Killams' argument as to alternate access under ANILCA, a private landowner affected by either alternate, conditionally approved route could thwart access by raising the same argument. Article II, § 14, however, does not require that Tieze be "bounced back and forth," as the trial court put it, between the Forest Service and the court in search of some alternate route that may or may not be environmentally sound, practical, or economically feasible.

Moreover, the Killams did not present any evidence showing that access over either of these two routes was consistent with statutorily required environmental considerations, practical, or economically feasible. Tieze must bear the cost of constructing any improvements on a route approved by the Forest Service. *See* 36 C.F.R. § 251.54(d)(3) (a proposal must contain sufficient evidence to

satisfy the authorized officer that the proponent has the financial capability to construct, operate, maintain, and terminate the project for which an authorization is requested); 36 C.F.R. § 251.54(e)(5)(iv) (an authorized officer shall reject any proposal if the officer determines that the proponent does not or cannot demonstrate economic feasibility of the proposed use or the financial capability to undertake the use). We note in this regard that the County requires access by a fourteen-foot wide road in accordance with County standards. Thus, considerations of practicality and cost are highly relevant in this case. The Killams failed to address those considerations.

Nonetheless, the Killams argue that ANILCA guarantees Tieze a threshold right to access to his property (subject to regulation and conditions) even if he cannot obtain legal access over the privately owned land potentially affected by the other routes considered in detail by the Forest Service. As noted, however, the Forest Service rejected two such potential routes entirely over National Forest land because of severe environmental consequences and the inability to obtain required permits from the Army Corps of Engineers. Moreover, the Killams did not present any evidence that either route would be practical or economically feasible.

In this regard, the Killams' reliance on *United States v. Jenks*, 129 F.3d 1348 (10th Cir.1997) (*Jenks II*), is unpersuasive. In *Jenks I, supra*, the Forest Service brought an action seeking to require Jenks to apply for and obtain a special use permit under ANILCA in order to use three access roads on National Forest land that he had been using without restriction. The special use permit would have imposed conditions regulating the use of the roads and required Jenks to pay a fee for his continued use of the roads. *Jenks I, supra*, 22 F.3d at 1516–17. The Tenth Circuit held that the Forest Service's permitting process was reasonable, but that Jenks was entitled to pursue his claims that a permit was not required because he had a right of access either by patent or common law.

On remand, the district court granted the Forest Service's motion for summary judg-

ment on Jenks's claim to patent or common law access. In *Jenks II*, the Tenth Circuit rejected Jenks's claim to a common law easement by necessity because the government had given unconditional public road easements over the three roads. The court went on, in dictum, to speculate that even if those easements were to lapse or terminate, Jenks "in all likelihood will still have a statutory right of access under ANILCA [and the Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701–1784], or some other federal statutory scheme, albeit subject to reasonable government regulation." *Jenks II, supra*, 129 F.3d at 1353–54.

The Killams take from *Jenks II* that ANILCA access precludes the conclusion that access over the Itaska Route is necessary. The Killams fail to acknowledge, however, that here Tieze has pursued access under ANILCA, but such access, as determined by the Forest Service in the exercise of its statutory and regulatory duties, is subject to, among other things, Tieze's obtaining legal access over the Killams' property via the Itaska Route. The facts here are therefore distinguishable from those in *Jenks*, which, in any event, did not address art. II, § 14.

The Killams also rely on both *Billington, supra*, and *LeSatz, supra*, as support for their contention that Tieze does not have the right to a private way of necessity because he has alternate access to his property under ANILCA. Both cases, however, are inapposite.

In *Billington*, the division held that where the prospective condemnor already possessed a common law way of necessity to a public road because his landlocked property and the adjacent property had previously been commonly owned, he could not proceed under art. II, § 14. *Billington, supra*, 789 P.2d at 197–98.

Here, Tieze's remedy under ANILCA is embodied in the Decision Notice (which includes various conditions), but otherwise is inchoate. The landowner in *Billington* had a present enforceable right to a common law way of necessity, whereas here Tieze has no presently enforceable right to access apart from that granted by the Decision Notice.

**16**

Similarly, in *LeSatz,* it was undisputed that the landowner could obtain a license for construction of a bridge across the waterway that divided his two properties, thereby providing him access from both properties to a public road. And there was no evidence that such construction was prohibitively costly. *LeSatz,* 757 P.2d at 1092.

The record in this case, however, supports the trial court's conclusion that the Killams had failed to prove any reasonable or practical access over another route. Obtaining access over another landowner's property, or over a route entirely on National Forest land, would take several years, and, as discussed in the EA and the environmental study accompanying it, would require (1) expensive and practically difficult mitigation measures to minimize negative impacts on wildlife and on wetlands and other environmentally sensitive areas, and (2) obtaining permits from other agencies, a prospect ranging from "difficult" to impossible. In this regard, we note that the Itaska Route is the only potential route that would not require construction, from scratch, of a road, meaning, as the trial court found, that the Itaska Route is the only existing route as to which environmental impacts have already occurred.

### IV. Conclusion

In sum, we conclude that the trial court's determinations that Tieze proved that a way of necessity is reasonably necessary and that the Killams did not prove, in any concrete fashion, that Tieze has either an alternate route of access or a present enforceable legal right to use one are not clearly erroneous. Accordingly, the trial court's determination that the Killams failed to rebut Tieze's showing of an entitlement to a private way of necessity over the Itaska Route under art. II, § 14 is likewise not clearly erroneous.

The judgment of the trial court is affirmed.

Judge WEBB and Judge CARPARELLI concur.