The GLENELK ASSOCIATION,
INC., Petitioner

v.

Ronald P. LEWIS, Respondent.

No. 10SC275.

Supreme Court of Colorado,
En Banc.

Sept. 12, 2011.

Rehearing Denied En Banc Oct. 11, 2011.

Hale Westfall, LLP, Allan L. Hale, Richard A. Westfall, Amanda A. Bradley, Denver, Colorado, Attorneys for Petitioner.

Boog & Cruser, P.C., Victor F. Boog, Lakewood, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' unpublished decision in *Ronald Lewis v. The Glenelk Ass'n, Inc.*, No. 09CA1209, 2010 WL 971691.[1] In this private condemnation proceeding, respondent Ronald P. Lewis seeks to condemn a private way of necessity across land owned by The Glenelk Association, Inc. ("Glenelk") to access an allegedly landlocked parcel of land for residen-

---

1. We granted certiorari on the following issue: Whether the court of appeals erred by deciding that the condemnor had proved necessity and scope of the proposed easement without examining the purported "practical use of the property" for which the taking is claimed to determine whether the taking is "indispensible" to that use.

tial development.[2] The trial court dismissed Lewis's petition in condemnation, concluding that Lewis failed to articulate a concrete proposal for development that would permit the court to determine the necessity for and appropriate scope of the allowable easement to be imposed through condemnation.

On appeal, the court of appeals ruled that the condemnation must be allowed to proceed if the proposed easement is for uses consistent with applicable zoning regulations. We determine that the trial court applied the correct legal standard and its findings of fact are supported by evidence in the record. Accordingly, we reverse the judgment of the court of appeals.

We hold that, when a petitioner seeks to condemn a private way of necessity for access to property it wishes to develop in the future, it must demonstrate a purpose for the condemnation that enables the trial court to examine both the scope of and necessity for the proposed condemnation, so that the burden to be imposed upon the condemnee's property may be ascertained and circumscribed through the trial court's condemnation order. The record in this case supports the trial court's dismissal of the condemnation petition.

## I.

Lewis owns an allegedly landlocked parcel of land in unincorporated Jefferson County ("the Lewis property"), consisting of approximately 334 acres. The parcel is zoned A–2 agricultural and may be developed at a density of up to one dwelling per ten acres. The Lewis property consists of a large southern portion and a narrow rectangular barbell that extends northward to the border of a parcel owned by Buffalo Park Development Company ("Buffalo Park"). The Buffalo Park parcel abuts both South Elk Creek Road and Highway 285. The barbell is approximately 200 feet wide and contains very steep terrain. It is bordered on the east by Glenelk's land. To the south of the barbell and the Glenelk property, and to the east of the Lewis property, is a parcel owned by Colorado Mountain Properties, Inc. ("CMP").

Lewis is a minority shareholder in both Buffalo Park and CMP. Both companies agreed to grant Lewis access across their parcels to reach the Lewis property. Lewis hired a professional civil engineer to design a road traveling from the Buffalo Park parcel, through the barbell and the CMP property, and into the southern portion of the Lewis property. The engineer designed three options. After Lewis submitted a preliminary grading permit proposal to Jefferson County, county authorities informed Lewis that none of the options complied with the county road specifications. Due to the steepness of terrain in the narrow barbell, the three options required vertical cuts drastically exceeding county specifications.

The engineer designed a fourth option for Lewis, requiring an easement over the Glenelk property to bypass steep terrain located in the barbell. A memo from a Jefferson County civil engineer indicated that the Jefferson County planning engineering staff would support this option. Lewis approached Glenelk to negotiate the easement necessary to complete the road. The trial court found that the parties negotiated in good faith regarding appropriate compensation for a permanent easement across the Glenelk property, but negotiations failed. Lewis then commenced this action by filing a petition in condemnation and requesting immediate possession.

The trial court held a hearing and took testimony from several witnesses. At the hearing, Lewis testified that he "would like to develop" the Lewis property, but he did not specify the scope of development envisioned. He answered questions from his attorney concerning the type of access necessary to develop the property in thirty-five acre residential parcels. His son, Norman Lewis, testified that he had researched the possibility of subdividing the Lewis property into ten acre sites and that the easement sought was designed to provide a twenty foot wide travel surface, including shoulders. Civil engineer Chris Purrington, who Lewis hired to design the easement, testi-

---

**2.** The parties dispute whether the Lewis property is actually landlocked, but we need not reach that question to resolve the issue on which we granted certiorari.

fied that the travel surface of the roadway he designed is "just about," or "more or less" twenty-five feet wide. Lewis sought to condemn a seventy foot wide easement to accommodate "ingress, egress, utilities, drainage, maintenance, snow storage, and emergency access for the benefit of the Lewis property, over, under, and across the Glenelk property."

The trial court denied Lewis's request for immediate possession, concluding that the record did not establish whether residential development was a practical use of the Lewis property, and whether the requested easement was "indispensable" to that use. Lewis filed a motion for reconsideration, where he argued:

> While it may be unclear whether or not the Lewis property will ultimately be developed for one single-family residence or as many as thirty single-family residences, together with barns, stables, and private garages, such uses of the Lewis property are clearly "practical uses." Furthermore, it is overwhelmingly clear that the permanent easement sought by [Lewis] across the Glenelk property is "indispensable" to such uses.

(emphasis added.)

The trial court denied the motion for reconsideration, concluding that ambiguity concerning Lewis's intended use for the property prevented it from determining whether the requested way of necessity would be adequate for that purpose. Confronted with the argument that the proposed development could vary between one and thirty residential lots, the trial court found the condemnation's purpose to be speculative and not concrete enough to allow it to determine the scope of and necessity for the proposed private way of necessity condemnation:

> In his reply, [Lewis] argues that it makes no difference how many lots are to be developed as without access to a legal road the Lewis property is not fit for any use. Such statement may be true but if testimony fails to reveal that the size of the proposed easement meets county regulations for purposes specified in testimony and pleadings [then] the petitioner has failed to meet his burden. The court must

at the least be assured that the proposed easement will be adequate for the development purpose. In this matter, the proposed purposes are too speculative for the court to assess the necessity and scope of the proposed easement.

Lewis appealed, and the court of appeals concluded that the trial court erred as a matter of law in dismissing Lewis's petition. We disagree.

## II.

■ We hold that, when a petitioner seeks to condemn a private way of necessity for access to property the condemnor wishes to develop in the future, the condemnor must demonstrate a purpose for the condemnation that enables the trial court to examine both the scope of and necessity for the proposed condemnation, so that the burden to be imposed upon the condemnee's property may be ascertained and circumscribed through the trial court's condemnation order. The record in this case supports the trial court's dismissal of the condemnation petition.

### A.

#### Standard of Review

■ The power of private condemnation derogates the common law, and we interpret statutes implementing this power narrowly. *Bly v. Story*, 241 P.3d 529, 533 (Colo.2010); *Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519, 522 (Colo.1982). We resolve ambiguities in the law in favor of the condemnee landowner. *Bly*, 241 P.3d at 533; *Coquina Oil Corp.*, 643 P.2d at 522.

■ In condemnation proceedings, we defer to the trial court's findings of fact unless they are so clearly erroneous as to find no support in the record. *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17 P.3d 797, 802 (Colo.2001); *see also In re A.J.L.*, 243 P.3d 244, 250 (Colo.2010). We review legal conclusions de novo. *Fowler Irrevocable Trust 1992–1*, 17 P.3d at 802. In private condemnation proceedings, necessity is a question of fact. *See Crystal Park Co. v. Morton*, 27 Colo.App. 74, 146 P. 566, 572 (1915) ("Whether the necessity for a way of

any character across respondents' land does in fact exist, or for the particular way asked for, and other matters that may be made issues of fact in condemnation proceedings, will, of course, depend on evidence to be adduced.").

## B.

### Private Condemnation

 Article II, section 14 of the Colorado Constitution provides, in relevant part, that "[p]rivate property shall not be taken for private use unless by consent of the owner, except for private ways of necessity." Private ways of necessity are generally roads or passageways, and they may run along an existing roadway. *E.g., Bly,* 241 P.3d at 534; *see also Akin v. Four Corners Encampment,* 179 P.3d 139, 144–45 (Colo.App.2007) (private way of necessity may not be condemned for gas pipeline because way of necessity is road or passageway used to connect landlocked property to public roads); *West v. Hinksmon,* 857 P.2d 483, 486 (Colo.App.1992). Condemnation of a private way of necessity is a "remedy of last resort." *State Dep't of Highways v. Denver & Rio Grande W. R.R.,* 789 P.2d 1088, 1091 (Colo.1990).

 A private way of necessity is similar in character to an easement and carries with it similar legal effects. *See Crystal Park,* 146 P. at 569 ("[P]rivate ways of necessity are there considered and provided for as a character of easement."). Like an easement, a private way of necessity creates a property right to enter and use another's land for a specific purpose. *See Bly,* 241 P.3d at 535 (citing with approval trial court's condemnation decree, which specified private way of necessity "shall be used for building, construction, residence in, and maintenance of one single-family home"); *Matoush v. Lovingood,* 177 P.3d 1262, 1264 n. 2 (Colo.2008) (quoting the Restatement (Third) of Prop. § 1.2(1) (2000)); *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1234 (Colo. 1998) ("An easement is a right conferred by grant, prescription or necessity authorizing one to do or maintain something on the land of another which although a benefit to the land of the former, may be a burden on the

land of the latter." (quoting *Barnard v. Gaumer,* 146 Colo. 409, 361 P.2d 778, 780 (1961))); *Wright v. Horse Creek Ranches,* 697 P.2d 384, 387 (Colo.1985) (noting that an easement confers upon its holder "an enforceable right to use property of another for specific purposes"); *Crystal Park,* 146 P. at 569 (referring to private ways of necessity as "passageways or roadways necessary in the sense that they are *indispensable to the practical use of the property for which they are claimed.*" (emphasis added)).

 Also like an easement, a private way of necessity prevents the underlying landowner from interfering with the uses authorized by the easement. *See Matoush,* 177 P.3d at 1264 n. 2; *Crystal Park,* 146 P. at 569 (private way of necessity as a type of easement). Because we strictly construe private condemnation law against the condemnor, there are limits on who may assert the right to condemn private property for a private way of necessity. In *State Department of Highways v. Denver & Rio Grande Western Railroad Co.,* 789 P.2d 1088, 1091–93 (Colo. 1990), we held that the State Department of Highways could not condemn a private way of necessity for the benefit of a landowner whose land had been taken by the state for construction of a rest area. In *Coquina Oil Corp.,* 643 P.2d at 523, we held that a federal oil and gas lessee cannot condemn a private way of necessity to access its leaseholds. *Accord Precious Offerings Mineral Exch., Inc. v. McLain,* 194 P.3d 455, 457 (Colo.App.2008)(holder of unpatented federal mining claim cannot assert private condemnation right).

 To assert the right to condemn, we have established that one must have more than a temporary possessory interest in the land benefited by the condemnation. *See Coquina Oil Corp.,* 643 P.2d at 522–23; *accord Precious Offerings Mineral Exch., Inc. v. McLain,* 194 P.3d at 457. The state cannot assert the right on behalf of a private citizen. *See State Dep't of Highways v. Denver & Rio Grande W. R.R.,* 789 P.2d at 1093–94. Equally important to prove that one falls within the class of persons who may assert the right to condemn a private way of necessity, a prospective condemnor must establish

necessity for the taking. A private way of necessity is necessary when it is "indispensable to the practical use of the property for which [it is] claimed." *Crystal Park*, 146 P. at 569. Thus, a private way of necessity is allowed only when it is indispensable to the petitioner's use of the property benefited by the condemnation.

■ The statutes set forth procedural requirements governing condemnation cases. In a private condemnation case, the prospective condemnor first must negotiate in good faith with the condemnee before initiating a judicial proceeding. *See* § 38–1–102(1), C.R.S. (2010). If those negotiations fail and the condemnor initiates judicial condemnation proceedings, the condemnor bears the burden of proving necessity for the requested private way of necessity by a preponderance of the evidence. *See Tieze v. Killam*, 179 P.3d 10, 13 (Colo.App.2007).

■ The condemnee landowner may avoid condemnation by pleading and proving that the prospective condemnor has a present enforceable right to use an acceptable alternative route of access. *Id.* If the trial court determines that the condemnor established a legal right to condemn the property in question, then the amount of compensation due to the condemnee may be determined by the condemnee's choice of either a commission of freeholders or a jury. §§ 38–1–105, –106, C.R.S. (2010). To avoid and provide for efficient resolution of future disputes regarding the scope of an easement, the trial court's condemnation decree should clearly and carefully define the easement's scope. *See Bear Creek Dev. Corp. v. Genesee Found.*, 919 P.2d 948, 954 (Colo.App.1996); *cf. Wright*, 697 P.2d at 388 (judicial delineation of extent of prescriptive easement should be performed with great caution).

Prior to ascertainment of compensation due to the condemnee, the condemnor may request immediate possession of the property it seeks to condemn. *See* §§ 38–1–105(6), –109, C.R.S. (2010). If the trial court concludes that the condemnor has established the right to condemn the property in question, it may grant immediate possession of the property, provided that the condemnor deposits with the court a sum sufficient to pay compensation due to the condemnee, once it is ascertained. § 38–1–105(6). When considering a motion for immediate possession, the trial court must consider the legal adequacy of the purpose to be served by the condemnation. *See id.;* § 38–1–109; *cf. Shaklee v. Dist. Court*, 636 P.2d 715, 717 (Colo.1981) (under analogous statutory scheme governing condemnation by transmission companies, concluding court must consider issue of public use before granting immediate possession); *Potashnik v. Pub. Serv. Co. of Colo.*, 126 Colo. 98, 102, 247 P.2d 137, 139 (1952)(statute authorizing immediate possession predicated on right to condemn).

Section 38–1–102 sets forth procedural requirements for all petitions in condemnation, including those in private condemnation. Among other things, section 38–1–102 requires a condemnation petitioner to state the "purpose for which said property is sought to be taken." In *Bly v. Story*, we considered the import of that language when determining the specificity with which a petitioner must state the purpose in a private condemnation petition. 241 P.3d at 535. For a petitioner to survive a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim, we determined that his or her petition must contain a sufficient statement of purpose. *Id.*

■ Whether a prospective private condemnor successfully proves necessity turns on the unique facts and circumstances of each particular case. *Crystal Park*, 146 P. at 572. If a prospective condemnor possesses an enforceable right to use an acceptable alternate route of access, then condemnor cannot establish necessity. *See Tieze*, 179 P.3d at 14 (condemnee failed to establish alternate route of access because of failure to identify a specific alternate route to which condemnor had present legal access); *accord Bear Creek Dev. Corp.*, 919 P.2d at 952 (option to purchase an easement providing desired access is not a legally enforceable right of access and therefore does not establish an alternate route of access); *Bear Creek Dev. Corp. v. Dyer*, 790 P.2d 897, 898 (Colo.App. 1990) (leasehold arrangement between condemnee and condemnor permitting condem-

nor access across condemnee's property did not establish an alternate route of access defeating condemnor's showing of necessity). Conversely, a condemnee cannot defeat the condemnor's showing of necessity by arguing that condemnor should have sought a private way of necessity across another's land; the condemnor may choose among adjoining landowners against whom it will proceed to condemn a private way of necessity.[3] *West*, 857 P.2d at 486–87.

Considering these principles and abiding by our mandate to construe statutes effectuating Article II, section 14's power of private condemnation narrowly and against the condemnor, we conclude that the scope of a private way of necessity is limited to that which is "indispensable" to the petitioner's intended use for the property. *Crystal Park*, 146 P. at 569; *see Bear Creek Dev. Corp.*, 919 P.2d at 954 (section 38–1–102 requires "that the condemnation petition describe in detail the nature of the use to be made of the land so that the burden on the landowner can be accurately evaluated").

In *Bly* we determined that the petition for a way of necessity could proceed. 241 P.3d at 535. There, the facts in support of the purpose for that condemnation articulated the condemnor's intent to build one single-family home on her property. *Id.* In its order condemning the easement, the trial court's order specified that it shall be used for building, construction, residence in, and maintenance of one single-family home. *Id.* Having so specified, the trial court order ensured that the condemnee's concerns, that the condemnor might rely on her easement to subdivide or commercially develop her property, thereby significantly increasing

traffic over the driveway, would not be realized without triggering the law applicable to overburdening an easement by change of use. *Id.*

Thus, the scope and necessity inquiry in a proposed way of necessity condemnation action requires the trial court to ascertain and circumscribe the burden to be imposed upon the condemnee's property.

## C.

### Application to this Case

■ In the case before us, Lewis did not articulate a concrete development proposal for the Lewis property, nor did he sufficiently engage the Jefferson County land use approval process prior to initiating this condemnation proceeding. The record does not clarify Lewis's intended use for the property or the size of the planned road with sufficient specificity to allow the trial court to analyze the necessity of the requested easement. Lewis testified regarding the possibility of developing nine thirty-five acre plots. In contrast, his son, Norman Lewis, testified about the possibility of developing the property in ten acre plots.

Thus, the evidence showed a variable proposal that would trigger different Jefferson County roadway and easement requirements depending upon the number of lots to be built and served. The failure of Lewis to sufficiently articulate the development plan prevented the trial court from determining the scope of the proposed condemnation sufficiently to determine the extent of the burden to be imposed upon the property to be

---

3. In some circumstances, we have held that a prospective condemnee cannot defeat the condemnor's showing of necessity by challenging the feasibility or practicability of the project to be benefited by a private condemnation. *E.g., Mortensen v. Mortensen*, 135 Colo. 167, 170, 309 P.2d 197, 199 (1957); *Gibson v. Cann*, 28 Colo. 499, 66 P. 879 (1901). For example, in *Schneider v. Schneider*, 36 Colo. 518, 522, 86 P. 347, 348 (1906), we held that the condemnee could not challenge the condemnor's attempt to condemn a right of way for a ditch on the grounds that the condemnor could not appropriate water necessary to make use of the ditch. *Accord Haver v. Matonock*, 75 Colo. 301, 304, 225 P. 834, 835

(1924) (in private condemnation action, question of necessity of condemnation for water pipeline across defendant's land cannot turn on availability of unappropriated water). However, Colorado water law, in both the statutes and the case law, now articulates a "can and will" test for a conditional water right decree. § 37–92–305(9)(b), C.R.S. (2010); *see Pagosa Area Water & Sanitation Dist. v. Trout Unlimited*, 170 P.3d 307 (Colo. 2007). This test calls into question the viability of our precedent restricting the court from inquiring into the feasibility of the development project, an issue we need not and do not decide here.

condemned. *See Bear Creek Dev. Corp.*, 919 P.2d at 954.

Jefferson County zoning regulations and road construction specifications require private roads and easements to meet different width standards depending on the number of dwellings serviced. These regulations provided the trial court with a helpful guide for assessing the proper geographic extent of an easement over Glenelk's property serving a residential development on the Lewis property. For example, both section 15 of Jefferson County's Zoning Resolution and the Jefferson County Roadway Design and Construction Manual require a minimum total road travel surface width of twenty feet for private roads serving up to fifteen dwelling units, and a minimum total road travel surface width of twenty-four feet for private roads serving sixteen or more dwelling units. Based on this, a trial court could reasonably conclude that an easement including a twenty foot wide road would be indispensable to a residential development of fifteen or fewer dwellings, and would minimize the burden on a condemnee landowner.

In this case, however, neither the road travel surface width, nor the intended magnitude of development envisioned by Lewis is clear. Norman Lewis testified that he calculated the requested width for the easement at seventy feet, based on the assumption that the road would consist of a sixteen foot wide travel surface with two foot wide shoulders on either side, for a total road travel surface width of twenty feet. Civil engineer Chris Purrington testified that the easement was designed for a road travel surface approximately twenty-five feet wide. The record also shows that Lewis's development plans could result in construction of up to thirty dwellings or much less.

Given the evidentiary shortcomings in this record, the trial court correctly concluded that it could not determine whether the seventy foot way of necessity Lewis requested was indispensable. *See Fowler Irrevocable Trust 1992–1*, 17 P.3d at 802; *Bear Creek Dev. Corp.*, 919 P.2d at 954. That determination necessarily hinges, in part, on the number of lots Lewis intends to develop and the width of the planned road's travel surface.

The trial court was tasked with drafting a condemnation decree minimizing the burden on the condemnee and clarifying the scope of the easement so as to avoid future disputes. *See Bear Creek Dev. Corp.*, 919 P.2d at 954; *cf. Bly*, 241 P.3d at 535 (noting that trial court's condemnation decree specified private way of necessity "shall be used for building, construction, residence in, and maintenance of one single-family home," thus allaying condemnee's concern that condemnor would commercially develop her property). Without adequate record support for a factual finding concerning the scope of Lewis's intended development and the size of the planned road, it could not ensure that those requirements were met. More specifically, it could not ensure that the geographic extent of the requested easement was appropriate, nor could it determine the appropriate purpose of the easement—that is, whether it would serve as few as one dwelling or as many as thirty dwellings. Accordingly, it correctly denied Lewis's request for immediate possession and dismissed his condemnation petition.

In reversing the trial court, the court of appeals relied on *Bear Creek Development Corp. v. Genesee Foundation*, 919 P.2d at 954, for the proposition that uses consistent with applicable zoning regulations are not so speculative as to require denial of a petition in private condemnation. We agree that a property's current zoning designation may function as a limit on the scope of a private way of necessity. However, the scope of a private way of necessity is defined by the condemnor's intended use, not by the relevant zoning regulations. Here, even assuming for the purposes of argument that a private way of necessity is required to develop the Lewis property, the court of appeals failed to consider whether the particular way of necessity requested by Lewis meets the indispensability requirement for private ways of necessity. *See Crystal Park*, 146 P. at 569.

We understand that in some cases it may be necessary to grant immediate possession to allow the condemnor to conduct the various studies required to complete a road grading application. However, where the condemnor's development plans are so vague

and undefined as in the instant case, the trial court may properly conclude that immediate possession is not necessary because the proper scope of the requested way of necessity, and therefore the actual necessity for the way, is unclear. *See Shaklee,* 636 P.2d at 717; *Potashnik,* 126 Colo. at 102, 247 P.2d at 139.

### III.

Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's judgment. On remand, the trial court shall address the matter of attorney fees, pursuant to section 38–1–122(1), C.R.S. (2010), and C.A.R. 39.5.