23CA1898 JKHP v Whipple 12-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1898
Eagle County District Court No. 23CV30037
Honorable Paul R. Dunkelman, Judge

---

JKHP, LLC,

Petitioner-Appellant,

v.

Thomas M. Whipple; NBH Bank; W. Ryland Gardner, III; Teak J. Simonton, in her official capacity as County Treasurer of Eagle County,

Respondents-Appellees.

---

ORDER AFFIRMED AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

---

Spector Law, LLC, Joel M. Spector, Denver, Colorado; Hamre, Rodriguez, Ostrander & Prescott, P.C., Donald M. Ostrander, Englewood, Colorado, for Petitioner-Appellant

JVAM PLLC, Alexander C. Clayden, Lucas F. Van Arsdale, Quentin H. Morse, Glenwood Springs, Colorado, for Respondent-Appellee Thomas M. Whipple

No Appearance for Respondents-Appellees NBH Bank; W. Ryland Gardner, III; Teak J. Simonton, in her official capacity as County Treasurer of Eagle County

¶ 1    In this private condemnation action, petitioner JKHP, LLC, appeals the district court's dismissal of its petition to condemn a private way of necessity across property owned by Thomas M. Whipple.  We affirm and remand the case for the district court to determine and award Whipple his reasonable appellate attorney fees and costs.

## I.    Background

### A.    The Properties

¶ 2    This case involves properties that are located on Taylor Hill in Eagle County.  JKHP owns two properties, the Joker Lode (Joker) and the Logos Lode (Logos).  Jason Provalenko is the manager of JKHP.  Whipple owns two properties, the Colorado Mint Lode (Colorado Mint) and the Big Sunflower Lode (Big Sunflower).  As shown in the site map below, Whipple's properties bisect the Joker and Logos properties, creating four quadrants referred to as West Joker, West Logos, East Joker, and East Logos.  Ohio Boy Lode (Ohio Boy) abuts West Joker and is located west of Colorado Mint.





Exhibit 35
Possession Hearing (2023CV30037)

DATE FILED: August 17, 2023 1:21 PM

¶ 3     The properties are accessible from Colorado State Highway 24.

Forest Service Road 731, also known as Ten Five Drive, connects

with Highway 24.  Ten Five Drive runs through a National

2

Monument,[1] private property, West Joker, Colorado Mint, Big Sunflower, East Joker, and East Logos where it then connects with a spur that connects to Taylor Creek Road, thereby creating a loop. Forest Service Road 731-1A, also known as Taylor Creek Road or the Lower Road, is south of Ten Five Drive and runs directly through the southern portion of Colorado Mint and Big Sunflower.

### B. History of Property and Access

¶ 4     David Faulkenberg acquired title to Joker, Logos, Colorado Mint, and Big Sunflower in 1980 and 1981. In 1982, Faulkenberg's family constructed a cabin on Big Sunflower now owned by Whipple. To provide access to the cabin, Faulkenberg's father extended an existing road spur from a point near the property between West Joker and Ohio Boy. That road is Ten Five Drive. Ten Five Drive crosses over Taylor Hill private parcels to reach Ohio Boy and West Joker, then runs easterly along West Joker and crosses Colorado Mint, Big Sunflower, East Joker, and East Logos. Ten Five Drive also crosses a sliver of United States Forest Service

---

[1] The Forest Service Property surrounding the properties at issue has been designated as a National Monument.

(USFS) property located between Ohio Boy and West Joker. This sliver was unknown to the parties until 2022 when it was discovered by Faulkenberg. The USFS has never challenged the use of the sliver by any of the property owners.

¶ 5    Taylor Creek Road intersects with Ten Five Drive west of the properties. It runs south and east across private property and federal land managed by the USFS. It then crosses the southern portions of Colorado Mint and Big Sunflower and another portion of USFS land. The road then forks, and the left fork goes northeast and crosses East Logos into East Joker.

¶ 6    In 1986, Faulkenberg conveyed Colorado Mint and Big Sunflower to his sister and brother-in-law. In the conveyance deed, Faulkenberg reserved access easements encompassing the existing twenty-foot roadways at Ten Five Drive and Taylor Creek Road burdening Colorado Mint and Big Sunflower and benefitting Joker and Logos. These access easements are depicted in blue and green on the site map below and run with the land. On the same date, Faulkenberg conveyed Joker and Logos to himself and his wife. In the conveyance deed, Faulkenberg reserved access easements

encompassing the existing twenty-foot roadways at Ten Five Drive and Taylor Creek Road burdening Joker and Logos and benefitting Colorado Mint and Big Sunflower. These access easements are depicted in red in the site map below and also run with the land.



¶ 7    We will refer to these easements as the Faulkenberg Easements.

¶ 8    In 2002, the previous owners of Joker, Logos, Colorado Mint, Big Sunflower, and Ohio Boy executed and recorded a Reciprocal Easement Deed (Easement Deed). The Easement Deed created a legal and enforceable easement that runs with the land, in the

location of Ten Five Drive, and runs across Colorado Mint and Big Sunflower, for access to the Joker and Logos properties. It also created a legal and enforceable easement that runs with the land, in the location of Taylor Creek Road, and runs across Colorado Mint and Big Sunflower, for access to the Joker and Logos properties.

### C. Road Variance and Special Use Permit

¶ 9 In 2017, Provalenko and other property owners in the Taylor Hill area sought a road variance to facilitate the construction of residential improvements on their properties. The variance requested the allowance of roads steeper than the grades recommended in the Eagle County Land Use Regulations. The Eagle County Board of County Commissioners granted a "Variance from Improvement Standards" (Resolution No. 2017-82) conditioned on the applicants obtaining approval from the USFS for the use of Ten Five Drive on its property to access private property in the Taylor Hill neighborhood.

¶ 10 Provalenko, on behalf of the Taylor Hill Equitable Road Users Group (THERUG), submitted an "Application for Transportation and Utility Systems and Facilities on Federal Lands," seeking an

easement from the federal government for ingress, egress, and road maintenance encompassing Ten Five Drive on USFS property. The USFS granted THERUG's application, including a private road special use permit (SUP). In the SUP, the USFS granted THERUG the right to use and maintain "the existing road (Ten Five Drive) in current condition, without any expansion, enhancement, or other improvements, strictly 'as is, where is' to access members' private inholding parcels."

### D. Events Preceding Immediate Possession Hearing

¶ 11 On February 10, 2023, JKHP, through counsel, sent a letter to Whipple's counsel with an offer to acquire a nonexclusive easement over the southern portion of Whipple's property near Taylor Creek Road. Using the 2022 tax assessor's data, JKHP valued the raw land on Colorado Mint at $11,228 per acre and the raw land on Big Sunflower at $12,368 per acre and determined that the value of the easement was $8,652. However, "to avoid potentially expensive and time-consuming litigation," JKHP offered Whipple $20,000 for the easement. Whipple did not reply to the offer. JKHP then filed this private condemnation action seeking to condemn the bottom

portion of Whipple's property to create a series of switchbacks (shown in the illustration below), starting in the southwest corner of Colorado Mint where Taylor Creek Road enters Whipple's property and across Big Sunflower, to provide access to West and East Logos from Taylor Creek Road. JKHP also requested immediate possession.



### E. Immediate Possession Hearing

¶ 12  At the immediate possession hearing, the district court heard testimony from Provalenko, Whipple, David Faulkenberg, and other witnesses, and it received numerous exhibits. In a detailed written

8

order, the court denied immediate possession, dismissed JKHP's petition in condemnation without prejudice, and awarded Whipple reasonable attorney fees and costs.

¶ 13 Concerning credibility, the court found Provalenko's testimony "lacking in credibility and unpersuasive." In doing so, it noted two other lawsuits involving the parties and access to the properties, the parties' contentious history, and Provalenko's lack of diligence in seeking less intrusive options. Thus, it found it could not make findings of necessity based solely on Provalenko's testimony. The district court noted the same credibility concerns with Whipple's testimony, but acknowledged the impact of that finding was different since Provalenko had the initial burden of proof.

¶ 14 Turning to the remaining evidence, the district court first found that the jurisdictional prerequisite of "failure to agree," which requires "good faith negotiations," was satisfied by Provalenko's offer to purchase the easement from Whipple and Whipple's non-response to the offer. The parties do not contest this finding.

¶ 15 Next, the court found that private ways of necessity satisfy the public purpose requirement, and that, subject to proving necessity,

the proposed condemnation furthered a public use and public purpose by providing access for residential and agricultural development on Provalenko's properties.

¶ 16    Concerning the remaining evidence of necessity and need for immediate possession, the court found that JKHP's action was premature and that JKHP had not proved necessity. First, it noted that private ways of necessity constitute a "remedy of last resort" and that JKHP's properties were not landlocked. Then, relying on the Faulkenberg Easements and the Easement Deed, the court found that JKHP has legal access to its properties in the form of easements over Ohio Boy, Colorado Mint, and Big Sunflower, and legal access to West Logos through USFS property off Taylor Creek Road, even if no road currently exists. Moreover, the court could not find, based on Provalenko's testimony, that a private way of necessity was reasonably necessary under the facts and circumstances of the case. It noted that JKHP had not taken the steps necessary to show that the existing access was not acceptable and could not be made acceptable by working with the County and the USFS.

10

¶ 17     On appeal, JKHP contends that the district court erred by (1) shifting the burden of proof; (2) requiring prerequisites to condemnation; and (3) dismissing the case without prejudice instead of simply denying the motion for immediate possession. We address and reject each contention.

## II.     Necessity and Burden of Proof

¶ 18     JKHP first contends that the district court improperly shifted the burden of proving the existence of alternate access, and that the record shows there are no acceptable alternate access routes to JKHP's property. We disagree and conclude that the court found JKHP did not prove necessity.

### A.     Standard of Review and Applicable Law

¶ 19     In condemnation proceedings, we defer to the district court's findings of fact unless they are so clearly erroneous as to find no support in the record. *Fowler Irrevocable Trust 1992-1 v. City of Boulder*, 17 P.3d 797, 802 (Colo. 2001). We review its legal conclusions de novo. *Id.* In private condemnation proceedings, necessity is a question of fact. *See Crystal Park Co. v. Morton*, 146 P. 566, 572 (Colo. App. 1915).

11

¶ 20   Under the Colorado Constitution, "[p]rivate property shall not be taken for private use unless by consent of the owner, except for private ways of necessity . . . ." Colo. Const. art. II, § 14; *see also* § 38-1-102(3), C.R.S. 2024. A way of necessity "is similar in character to an easement" and "creates a property right to enter and use another's land for a specific purpose." *Glenelk Ass'n v. Lewis*, 260 P.3d 1117, 1121 (Colo. 2011). Specifically, a way of necessity is a passageway or roadway that provides "legal access connecting landlocked property to a public road." *Akin v. Four Corners Encampment*, 179 P.3d 139, 144 (Colo. App. 2007); *see also West v. Hinksmon*, 857 P.2d 483, 486 (Colo. App. 1992) (Private ways of necessity "include ways for reasonable and practical access to property otherwise isolated."). Condemnation of a private way of necessity is a "remedy of last resort." *State Dep't of Highways v. Denver & Rio Grande W. R.R. Co.*, 789 P.2d 1088, 1091 (Colo. 1990).

¶ 21   Further, because condemnation of a private way of necessity is in derogation of private property rights, courts "strictly construe private condemnation law against the condemnor." *Glenelk Ass'n*, 260 P.3d at 1121. Any uncertainties or ambiguities in the law or

regarding the scope of the power to condemn must be resolved in favor of the condemnee landowner.  *Id.* at 1120; *Akin,* 179 P.3d at 144.

¶ 22     In a private condemnation action, the prospective condemnor must prove a necessity for the proposed easement.  *Glenelk Ass'n,* 260 P.3d at 1121-22; *Tieze v. Killam,* 179 P.3d 10, 13 (Colo. App. 2007).  A private condemnation is necessary if it is "indispensable to the practical use of the property for which [it is] claimed." *Glenelk Ass'n,* 260 P.3d at 1123 (quoting *Crystal Park Co.,* 146 P. at 569).  The condemnor's necessity need not be absolute, but the way must be "reasonably necessary under the facts and circumstances of the case."  *West,* 857 P.2d at 487 (potential condemnor proved necessity because property was landlocked without public ingress or egress); *see also Tieze,* 179 P.3d at 13 (potential condemnor proved necessity because property was approved for residential use and was landlocked).

¶ 23     Once a prospective condemnor establishes necessity for a private way of access, the party seeking to avoid condemnation must prove an alternate route exists, and the potential condemnors

have a present enforceable right to use it. *Glenelk Ass'n,* 260 P.3d at 1122; *Tieze,* 179 P.3d at 13.

B. Analysis

¶ 24 We conclude the district court did not improperly shift the burden of proof to JKHP because JKHP failed to prove necessity. "If a prospective condemnor possesses an enforceable right to use an accessible alternate route of access then [the] condemnor cannot establish necessity." *Glenelk Ass'n,* 260 P.3d at 1122.

¶ 25 While Provalenko testified that he intended to use the private access to develop his property for both residential and agricultural purposes and that the equipment necessary to further such development could not travel on the existing roads, he presented nothing beyond his testimony to establish these facts. And given the court's credibility findings, we may not consider this testimony. *See Mariani v. Rocky Mountain Hosp. & Med. Serv.,* 902 P.2d 429, 436 (Colo. App. 1994), *aff'd,* 916 P.2d 519 (Colo. 1996).

¶ 26 Additionally, Provalenko testified that a portion of Ten Five Drive has a twenty-eight percent grade and does not meet Eagle County's Land Use Regulations. However, Provalenko did not

14

present any evidence from Eagle County that the road was unacceptable. Moreover, the record shows that Provalenko previously sought and obtained a grade variance from the County and the USFS, and that he has taken no steps to determine whether such variances can be obtained for the existing roads. Again, we may not consider his testimony or substitute our judgment for the district court's. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24 ("We may not . . . substitute our judgment for the trial court's.").

¶ 27    Similarly, Provalenko testified that he lacked access to East Joker and East Logos via Ten Five Drive because the road crosses a sliver of USFS land. But Provalenko did not present any evidence that the USFS actually owns the land or that it objected to Provalenko's use of Ten Five Drive. To the contrary, the record shows that Provalenko and Whipple regularly traversed Ten Five Drive without objection by the USFS.

¶ 28    We are not persuaded otherwise by JKHP's reliance on *Tieze* or *West* because in both cases, the condemnor's property was landlocked and no legal access existed. In contrast, the

15

nontestimonial record here shows that access to the East Joker and East Logos properties via Ten Five Drive and Taylor Creek Road across Whipple's property has existed since the 1980s. It also shows that Provalenko owns and accesses a small cabin on West Logos from the house he constructed on West Joker. While JKHP claims Provalenko's unrebutted testimony shows that it would be impractical to access West Logos via Taylor Creek Road or to construct a road from West Joker to West Logos, the district court declined to credit Provalenko, so we may not consider this unrebutted testimony. *Mariani*, 902 P.2d at 436. Moreover, we are not convinced that the land use regulations themselves, without more, establish impracticality, particularly given record evidence showing a previous variance grant and a willingness by the USFS to work with the Taylor Hill property owners.

¶ 29    Finally, Provalenko offered no other evidence, beyond his testimony, to show that his property is inaccessible. Therefore, we agree with the district court that JKHP failed to establish necessity and thus, that the district court did not need to address whether Whipple had shown that an acceptable alternate route of access

16

exists. And because necessity was not proven, we further conclude that any error in the court's application of the burden of proof beyond necessity is harmless.

¶ 30 Accordingly, we affirm the court's ruling.

### III. Prerequisites to Condemnation

¶ 31 JKHP next contends that the district court erroneously (1) required JKHP to seek permits and variances from governmental authorities as a prerequisite to condemnation, and (2) failed to properly apply *Glenelk Ass'n* by requiring it to file a building application as a prerequisite to condemnation. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 32 In condemnation proceedings, we review legal conclusions de novo. *Fowler Irrevocable Trust 1992-1*, 17 P.3d at 802. Necessity is a question of fact. *Glenelk Ass'n*, 260 P.3d at 1120. The district court's findings of fact are reviewed for clear error. *Id.* A district court's factual finding is clearly erroneous if it lacks record support. *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 11.

¶ 33    JKHP contends that the district court erred by requiring JKHP to seek alternate access, including asking the USFS and the County about access from Taylor Creek Road, and to be denied such access as a prerequisite to condemnation. We disagree because the record shows that the district court considered JKHP's failure to engage with any of the relevant governmental authorities as part of the factual reasons for finding that it failed to prove necessity. Indeed, Colorado courts consider the position of governmental authorities in determining whether a condemnation may proceed. *See Glenelk Ass'n*, 260 P.3d at 1119-24 (considering Jefferson County's determination on the proposed condemnation and concluding that the petitioner failed to meet his burden because he failed to sufficiently engage the County land use approval process prior to initiating the condemnation proceeding); *Tieze*, 179 P.3d at 13 (considering Summit County's determination on the proposed condemnation). Therefore, we reject JKHP's assertion that the court *required* it to seek alternate access as a prerequisite to condemnation and instead, view the court's mention of JKHP's

18

decision not to engage government agencies as a factual finding that weighed against a finding of necessity.

¶ 34    We apply the same reasoning to JKHP's argument that the district court erroneously required it to submit a building application with Eagle County as a prerequisite to condemnation. JKHP relies on *Glenelk Ass'n* to argue that it demonstrated a purpose for the condemnation through Provalenko's testimony that he intended to build a house on East Logos. *See Glenelk Ass'n*, 260 P.3d at 1119 ("[W]hen a petitioner seeks to condemn a private way of necessity for access to property it wishes to develop in the future, it must demonstrate a purpose for the condemnation that enables the trial court to examine both the scope of and necessity for the proposed condemnation, so that the burden imposed on the condemnee's property may be ascertained and circumscribed through the trial court's condemnation order."). But we conclude that *Glenelk Ass'n* supports the court's ruling. In *Glenelk Ass'n*, the supreme court affirmed the district court's dismissal of the condemnation petition and found that the petitioner failed to prove necessity by presenting a vague and undefined concept for

development without sufficiently engaging the land use approval process. *Id.* at 1119-20.

¶ 35 Here, the only evidence of future development came from Provalenko's testimony, which the court declined to credit. And contrary to JKHP's argument, the court's order did not require a building permit as a prerequisite to condemnation, but instead, showed that the absence of any attempt to acquire such a permit weighed against a finding of necessity.

¶ 36 Finally, we are not persuaded that the court erred in finding that JKHP failed to do its due diligence. The court found that Provalenko's testimony lacked credibility. Therefore, its findings that Provalenko lacked concrete development plans, despite his testimony to the contrary, is supported by the record.

## IV. Dismissal of Case

¶ 37 JKHP last contends that the district court erroneously dismissed the case without prejudice rather than denying the motion for immediate possession. We disagree.

### A. Standard of Review and Applicable Law

¶ 38 In condemnation proceedings, we review legal conclusions de novo. *Fowler Irrevocable Trust 1992-1*, 17 P.3d at 802. A private

condemnation action is a special statutory proceeding that must be conducted in accordance with the eminent domain statutes. *Bly v. Story*, 241 P.3d 529, 534 (Colo. 2010). It proceeds in two parts: (1) an immediate possession hearing, and (2) a valuation trial. *See Bd. of Cnty. Comm'rs v. DPG Farms, LLC*, 2017 COA 83, ¶ 4.

¶ 39    Section 38-1-105(6)(a), C.R.S. 2024, governs the immediate possession hearing and provides in relevant part:

> At any stage of such new proceedings or of any proceedings under this article, the court, by rule in that behalf made, may authorize the petitioner, if already in possession, to use, and, if not in possession, to take possession of and use, said premises during the pendency and until the final conclusion of such proceedings and may stay all actions and proceedings against such petitioner on account thereof, if such petitioner pays a sufficient sum into court, or to the clerk thereof, to pay the compensation in that behalf when ascertained.

¶ 40    Thus, the court must determine whether the petitioner is entitled to immediate possession and if so, the amount of the deposit to be posted.

¶ 41 Other statutes relevant to immediate possession include sections 38-1-109, C.R.S. 2024, and 38-1-105(1). Section 38-1-109 provides, in relevant part:

> [A]t the hearing provided for in section 38-1-105, the court shall hear and dispose of all objections that may be raised touching the legal sufficiency of the petition or cross petition or the regularity of the proceedings in any other respect.

¶ 42 Further, section 38-1-105(1) states that "[t]he court shall hear proofs and allegations of all parties interested touching the regularity of the proceedings and shall rule upon all objections thereto."

¶ 43 When a motion for immediate possession is denied on grounds that go to "the core" of the asserted right to condemn, dismissal of the case is proper. *Coquina Oil Corp. v. Dist. Ct.*, 623 P.2d 40, 42 (Colo. 1981).

## B. Analysis

¶ 44 We conclude that the district court properly applied the condemnation statute in dismissing the petition. The court found that JKHP was not authorized to condemn a private way of necessity. In doing so, the court "hear[d] and dispose[d] of all

22

objections that may be raised touching the legal sufficiency of the petition." § 38-1-109; *see also Shaklee v. Dist. Ct.*, 636 P.2d 715, 718 (Colo. 1981) (vacating the district court's immediate possession order entered without considering the public use and necessity issues and holding that the district court needed to resolve all issues before awarding immediate possession); *Glenelk Ass'n*, 260 P.3d at 1119-20 (affirming the district court's dismissal of the petition when petitioner failed to prove necessity). And because the district court's ruling went to "the core" of JKHP's asserted right to condemn, dismissal without prejudice was proper. *Coquina Oil Corp.*, 623 P.2d at 42.

## V.    Attorney Fees

¶ 45    Whipple requests his attorney fees under C.A.R. 39 and 39.1, and section 38-1-122(1), C.R.S. 2024.

¶ 46    Section 38-1-122(1) provides:

> If the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding, it shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings.

¶ 47    A respondent who successfully defends a failed condemnation hearing on appeal is also entitled to their appellate attorney fees. *Akin*, 179 P.3d at 147-48.

¶ 48    Additionally, C.A.R. 39.1 provides the appellate court with the discretion to determine the amount of an award for attorney fees on appeal or to remand for a determination of those issues by the district court.  Accordingly, we exercise our discretion and remand the case to the district court to determine and award Whipple his reasonable costs and attorney fees on appeal.

## VI.    Disposition

¶ 49    The order is affirmed, and the case is remanded for the district court to determine and award Whipple his reasonable appellate attorney fees and costs.

JUDGE GROVE and JUDGE LUM concur.

24